ARMANDO VALERIANO *v.* GEORGE D.
BRONSON, WARDEN
(5457)

DUPONT, C. J., HULL and BORDEN, Js.

Argued June 5—decision released September 15, 1987

*Patrice S. Noah,* for the appellant (petitioner).

*Steven M. Sellers,* assistant state's attorney, for the appellee (respondent).

HULL, J. After a trial to a jury, the petitioner was convicted of felony murder in violation of General Statutes § 53a-54c. The crime involved a fire started by the petitioner on January 14, 1977, as a result of which the victim died on April 27, 1978. The petitioner filed a direct appeal in our Supreme Court, which affirmed the

conviction. *State* v. *Valeriano*, 191 Conn. 659, 469 A.2d 936 (1983), cert. denied, 466 U.S. 974, 104 S. Ct. 2351, 80 L. Ed. 2d 824 (1984).

The petitioner thereafter filed the present habeas corpus petition. He claimed that he did not receive the effective assistance of appellate counsel because his appellate counsel did not raise in his direct appeal the common law "year and a day" rule, which bars conviction for a homicide if the victim does not die within a year and a day of the defendant's conduct which caused the death.[1] After an evidentiary hearing, the habeas court denied the petition.[2] Upon a grant of certification by the habeas court, this appeal followed.

The principal issue presented in this appeal is whether the traditional "deliberate bypass" standard should be applied to a habeas corpus petition when the failure to raise a particular issue on direct appeal resulted from a deliberate decision on the part of the petitioner's appellate counsel. In the present case, the petitioner's trial counsel, who was also his appellate counsel, raised the "year and a day" rule in the trial court, where it was rejected. The petitioner was not advised by his appellate counsel of the tactical decision to omit the issue regarding the applicability of the "year and a day"

---

[1] The petitioner raised three claims of error in his direct appeal. The claims were that the trial court erred (1) in its instruction on the phrase, "in furtherance of such crime," in the felony murder statute, (2) in refusing to submit to the jury an affirmative defense available under the felony murder statute, and (3) in denying the defendant's motion to exclude a witness as incompetent, in permitting that witness to invoke the privilege against self-incrimination, and in refusing to strike his testimony. *State* v. *Valeriano,* 191 Conn. 659, 661, 469 A.2d 936, cert. denied 466 U.S. 974, 104 S. Ct. 2351, 80 L. Ed. 2d 824 (1984).

[2] The habeas court considered the merits of the "year and a day" rule. In a fifteen page memorandum of decision, the court addressed the rule and concluded that the " 'year and a day' rule, if it ever did exist here, has not evolved; it has atrophied. Appellate counsel was correct, not ineffective."

rule from his direct appeal. The decision to omit this issue was reached solely by his appellate counsel. The state argues, therefore, that the "deliberate bypass" rule is inapplicable to the facts of the present case. Although this precise issue has not been determined by this or any other Connecticut court, we are guided in our analysis by well settled precedent regarding the writ of habeas corpus as established by both Connecticut and federal courts.

The general proposition that a habeas corpus action cannot be used as an alternative to a direct appeal is well established in Connecticut law. See *Cajigas* v. *Warden,* 179 Conn. 78, 81, 425 A.2d 571 (1979); *Blue* v. *Robinson,* 173 Conn. 360, 369, 377 A.2d 1108 (1977); *Vena* v. *Warden,* 154 Conn. 363, 365, 225 A.2d 802 (1966). In *Wojculewicz* v. *Cummings,* 143 Conn. 624, 628, 124 A.2d 886 (1956), our Supreme Court held that an exception to this common law limitation should be made when the conviction which gave rise to the challenged detention was obtained in violation of the petitioner's rights under the *federal* constitution. The court further modified this exception in *Vena* v. *Warden,* supra, by adopting the rationale of the United States Supreme Court in *Fay* v. *Noia,* 372 U.S. 391, 83 S. Ct. 822, 9 L. Ed. 2d 837 (1963), and holding that "a petitioner may collaterally raise federal constitutional claims in a habeas corpus proceeding even though he has failed to appeal his federal constitutional claims directly to [the court] *if he alleges and proves, by a fair preponderance of the evidence, facts which will establish that he did not deliberately bypass the orderly procedure of a direct appeal.*" (Emphasis added.) *Vena* v. *Warden,* supra, 366–67.

For over a decade, the "deliberate bypass" rule stemming from *Fay* v. *Noia,* supra, has been consistently applied by our courts without exception. The rationale of the "deliberate bypass" standard has been summa-

rized by our Supreme Court as serving two important functions: (1) it prevents piecemeal litigation; and (2) it prevents a prisoner from deliberately deferring his claims until a time when a new trial, if required, would be impossible. See *Paulsen* v. *Manson,* 193 Conn. 333, 476 A.2d 1057 (1984); *D'Amico* v. *Manson,* 193 Conn. 144, 146–47, 476 A.2d 543 (1984). In applying this standard, a court must find that the record " 'affirmatively disclose[s] that the plaintiff's decision to waive his right to appeal was voluntarily, knowingly and intelligently made' " before it can conclude that there has been a deliberate relinquishment of the right to appeal. *D'Amico* v. *Manson,* supra, 148. It is clear, therefore, that the deliberate bypass rule focuses on whether the habeas corpus petitioner personally made, as a criminal defendant, a decision to bypass an appeal.

Subsequent to the holding in *Fay* v. *Noia,* supra, however, the United States Supreme Court developed a more restrictive standard, that of "cause" and "prejudice," for access to federal habeas corpus relief by a state prisoner. In *Wainwright* v. *Sykes,* 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), the United States Supreme Court held that a state prisoner could not bring his claims to a federal habeas court absent a showing of "cause" for his state procedural default, and actual "prejudice" resulting therefrom. Although the court chose not to define the precise contours of the "cause" and "prejudice" standard, it noted that the standard was narrower than the broad standard set forth in *Fay* v. *Noia,* supra. *Wainwright* v. *Sykes,* supra, 87. The court recently made clear that the "cause" and "prejudice" standard applies to procedural defaults on appeal as well as to those at trial. *Murray* v. *Carrier,* 477 U.S. 478, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986).

In the aftermath of *Wainwright* v. *Sykes,* supra, various courts have noted that it is unclear as to which

cases are to be evaluated by the *Fay* v. *Noia* "deliberate bypass" standard, and which are to be evaluated by the *Wainwright* v. *Sykes* "cause" and "prejudice" standard. See, e.g., *Frazier* v. *Czarnetsky,* 439 F. Sup. 735, 737 (S.D.N.Y. 1977). Our Supreme Court, while consistently adhering to the "deliberate bypass" standard, has nevertheless acknowledged the emergence of the narrower "cause" and "prejudice" standard, and noted that such standard accomplishes the same important functions as those served by the "deliberate bypass" rule. See *Paulsen* v. *Manson,* supra, 338 n.5; *D'Amico* v. *Manson,* supra, 148. In *McClain* v. *Manson,* 183 Conn. 418, 428–29 n.15, 439 A.2d 430 (1981), the court noted the issue as follows: "It appears that the Supreme Court 'is more apt to find a habeas petitioner bound by a bypass with respect to a strategic or tactical decision of the kind normally committed to counsel, than with respect to decisions of the sort entrusted to the defendant himself.' . . . Included in this latter category would be decisions whether to plead guilty, to forego the assistance of counsel, or to refrain from an appeal." The court implied, therefore, that the "deliberate bypass" standard is properly applicable only in those situations where the defendant himself had the ultimate responsibility for a tactical decision resulting in a procedural default.

In each of the cases which has been considered by our courts, the petitioner either failed to bring an appeal at all; see, e.g., *Paulsen* v. *Manson,* supra; *D'Amico* v. *Manson,* supra; or appeared on appeal pro se and therefore made all the tactical decisions regarding the presentation of the appellate issues himself. See, e.g., *Galland* v. *Bronson,* 204 Conn. 330, 527 A.2d 1192 (1987). In these situations, the defendant shouldered the ultimate responsibility for the tactical decisions of his case, and therefore was properly subject to a "deliberate bypass" inquiry. The court in *McClain* v.

*Manson,* supra, left unresolved, however, the question of whether the "cause" and "prejudice" standard should be applied in those situations in which *counsel* did not raise an issue on appeal. In the present case, we are squarely confronted with this situation and must therefore resolve the question left open in *McClain* v. *Manson,* supra.

Where, as in this case, the petitioner had no part in the tactical decision which ultimately resulted in the procedural default, and where such a decision is normally and of necessity entrusted to counsel, the "deliberate bypass" standard requiring a showing of a "knowing and intelligent waiver" is inapplicable. See *Wainwright* v. *Sykes,* supra, 94 (Burger, C. J., concurring). The determination of which issues to present, and which issues not to present, on an appeal is by its nature a determination committed to the expertise of appellate counsel, and not to his client. *Jones* v. *Barnes,* 463 U.S. 745, 749, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983). By that determination, appellate counsel seeks to focus the concern of the appellate court on those issues which he deems to be most persuasive, and thus does appellate counsel most effectively present his client's appeal. Id., 751–52. Therefore, it simply does not make sense to ask whether a habeas corpus petitioner personally and deliberately bypassed the appellate process as to a tactical decision which was never his to begin with.

Indeed, it would be inconsistent with one of the principal purposes of the deliberate bypass rule to apply it in a case such as this. That rule seeks in part to prevent a prisoner from deliberately deferring his claim until it is too late to retry him effectively. *Paulsen* v. *Manson,* supra. It focuses on the interest of the state in prosecuting crimes while the evidence is still available. In a case such as this, however, the focus is on a tactical decision which belongs solely to counsel. A

habeas corpus petitioner would always be able to establish that he had not deliberately bypassed an appeal, because he never would have had the final choice in the tactical appellate decision which he seeks to challenge. Thus, he could at any time, subsequent to his direct appeal, no matter how late, meet the threshold requirement for habeas corpus.

We therefore conclude that the "cause" and "prejudice" test of *Wainwright* v. *Sykes,* supra, rather than the "deliberate bypass" test, applies to the strategic or tactical determination of whether to include a particular issue on appeal. That is precisely the sort of tactical decision which is left to counsel. Our conclusion is also based on our Supreme Court's penchant for following the lead of federal precedent in habeas corpus actions, and on the clear holdings of recent decisions of the United States Supreme Court on this precise issue.

Although the United States Supreme Court has eschewed cataloging the circumstances that would and would not justify a finding of "cause," it has stated that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective facts external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray* v. *Carrier,* supra, 488. Recent cases have provided some elaboration on the "cause" requirement.

On one hand, the United States Supreme Court has held that the ignorance of or inadvertent failure to raise a substantive claim of error does not constitute cause. Id., 493–94. Nor does a deliberate and tactical decision not to pursue a particular claim on appeal constitute cause, as long as that decision does not itself amount to ineffective assistance of counsel. *Smith* v. *Murray,* 477 U.S. 527, 535, 106 S. Ct. 2661, 91 L. Ed. 2d 434

(1986). In fact, such a tactical decision "is the very antithesis of the kind of circumstance that would warrant excusing a defendant's failure to adhere to a state's legitimate rules for the fair and orderly disposition of its criminal cases." Id.

On the other hand, the failure to raise a novel legal claim which was not reasonably available to counsel at the time of the default may constitute cause. *Smith* v. *Murray,* supra; *Reed* v. *Ross,* 468 U.S. 1, 104 S. Ct. 2901, 82 L. Ed. 2d 1 (1984).[3] Additionally, ineffective assistance of counsel can constitute cause, even where the claim is based on a single tactical decision of the counsel. *Murray* v. *Carrier,* supra, 490.

In order to establish prejudice, the petitioner must show "not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." (Emphasis in original.) *United States* v. *Frady,* 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816, reh. denied, 456 U.S. 1001, 102 S. Ct. 2287, 73 L. Ed. 2d 1296 (1982); see

[3] We note that *Turcio* v. *Manson,* 186 Conn. 1, 439 A.2d 437 (1982), involved such a situation. In that case, the petitioner directly appealed his conviction but failed to raise a claim that his jury instructions violated the rule of *Sandstrom* v. *Montana,* 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979). *Sandstrom* was decided five months after oral argument in the petitioner's direct appeal and eight days before the release of our Supreme Court's opinion on that direct appeal. Our Supreme Court, in the subsequent habeas corpus action, held that there had been no deliberate bypass of the orderly procedure of direct appellate review. The *Sandstrom* issue was in the nature of a novel legal claim which was not reasonably available to counsel at the time of the default. *Smith* v. *Murray,* 477 U.S. 527, 533, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986).

We note that in *Turcio* our Supreme Court applied the "deliberate bypass" standard, although the tactical decision of which issues to present on appeal was made by counsel. That case, however, was decided prior to *Murray* v. *Carrier,* 477 U.S. 478, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986), in which the United States Supreme Court extended the "cause" and "prejudice" standard of *Wainwright* v. *Sykes,* 433 U.S. 72, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977), to apply to tactical decisions made on appeal.

also *D'Amico* v. *Manson*, supra, 154–57. A finding that the petitioner has failed to carry his burden of showing cause for noncompliance with procedural rules and prejudice resulting therefrom does not end the inquiry. *Smith* v. *Murray*, supra, 537. The "cause" and "prejudice" standard will not apply in cases where there has been a "fundamental miscarriage of justice." Id.; *Murray* v. *Carrier*, supra. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Murray* v. *Carrier*, supra, 496.

The petitioner argues that because of his appellate counsel's failure to raise the "year and a day" rule on direct appeal, he was rendered ineffective assistance of appellate counsel. He therefore claims that even under the narrower "cause" and "prejudice" standard, he has demonstrated sufficient cause. Whether counsel's performance was constitutionally deficient is determined under the test of *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); see also *Smith* v. *Murray*, supra, 533. That test requires a two component inquiry: first, it must be shown that the attorney's performance was so deficient and his errors so serious that "counsel was not functioning as . . . 'counsel' " and, second, that those errors functioned so "as to deprive the defendant of a fair [appeal], [an appeal] whose result is reliable." *Strickland* v. *Washington*, supra, 687; see also *Levine* v. *Manson*, 195 Conn. 636, 640, 490 A.2d 82 (1985). In assessing the appellate attorney's conduct, we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under these circumstances, the challenged action 'might be considered sound [appellate]

strategy.' " *United States ex rel. Roche* v. *Scully,* 739 F.2d 739, 742 (2d Cir. 1984), quoting *Strickland* v. *Washington,* supra, 689. Moreover, " '[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.' " *Smith* v. *Murray,* supra, 536. If the defendant is "represented by counsel whose performance is not constitutionally ineffective under [this] standard . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default." *Murray* v. *Carrier,* supra, 488.

Applying this standard to the present case, we conclude that the petitioner has failed to demonstrate that his appellate counsel's representation was ineffective. The record reveals that counsel carefully considered the "year and a day" rule, and concluded that the claim would be a weak argument on appeal. Although there are courts which have adopted the "year and a day" rule; see, e.g., *State* v. *Williams,* 247 Ga. 200, 275 S.E.2d 62 (1981); *State* v. *Minster,* 302 Md. 240, 486 A.2d 1197 (1985); *Elliot* v. *Mills,* 335 P.2d 1104 (Okla. Crim. App. 1959); *Cole* v. *State,* 512 S.W.2d 598 (Tenn. Crim. App. 1974); *State* v. *Edwards,* 104 Wash. 2d 63, 701 P.2d 508 (1985); there are also many courts which have rejected or refused to adopt the rule. See *People* v. *Snipe,* 25 Cal. App. 3d 742, 102 Cal. Rptr. 6 (1972); *State* v. *Sandridge,* 5 Ohio Op. 3d 419, 365 N.E.2d 898 (1977); *Commonwealth* v. *Ladd,* 402 Pa. 164, 166 A.2d 501 (1960); *People* v. *Brengard,* 265 N.Y. 100, 191 N.E. 850 (1934); *People* v. *Legeri,* 239 App. Div. 47, 266 N.Y.S. 86 (1933). Moreover, Connecticut has never expressly adopted or applied the rule. As the habeas court in this case found, the rule's common law roots were in the inability of primitive medical science to

determine the cause of death with reasonable certainty. Those roots may no longer be viable.

The petitioner's appellate counsel chose to rely on arguments which reasonably competent counsel would have considered stronger than the "year and a day" rule. See footnote 1, supra. The process of winnowing out the weaker arguments of an appeal and focusing on those more likely to prevail does not constitute ineffectiveness. Rather, it is the "hallmark of effective appellate advocacy." *Smith* v. *Murray,* supra, 536. We conclude that the record does not support the petitioner's claim of ineffective assistance of counsel, and that the petitioner has therefore failed to demonstrate cause. In light of this failure, we need not reach the question of whether he was prejudiced by the failure of appellate counsel to raise the "year and a day" rule on appeal. Nor do we find a fundamental miscarriage of justice in this case necessitating a suspension of the application of the "cause" and "prejudice" standard.

There is no error.

In this opinion the other judges concurred.