# ANTHONY OLIPHANT *v.* WARDEN, STATE PRISON*

Superior Court, Judicial District of Tolland
File No. CV-08-4002357-S

Memorandum filed February 15, 2011

---

* Affirmed. *Oliphant* v. *Commissioner of Correction*, 146 Conn. App. 499, 79 A.3d 77 (2013).

SFERRAZZA, J. Court-appointed habeas counsel moves to withdraw based on the absence of any nonfrivolous issues.

The petitioner, Anthony Oliphant, filed petitions for a writ of habeas corpus on February 27, 2007, under docket number CV-07-4001597, on December 14, 2007, under docket number CV-08-4002149, on April 3, 2008, under docket number CV-08-4002357 and on September 9, 2008, under docket number CV-08-4002616, challenging the legality of his detention. The petitions were consolidated under docket number CV-08-4002357. The petitioner was charged with larceny in the first degree by defrauding a public community. After a jury trial, at which he represented himself with Attorney Michael Moscowitz as standby counsel, he was found guilty and sentenced to fifteen years of incarceration, suspended after seven years, followed by five years of probation. His conviction was affirmed on appeal. See *State* v. *Oliphant*, 47 Conn. App. 271, 702 A.2d 1206 (1997), cert. denied, 244 Conn. 904, 714 A.2d 3 (1998).

On August 30, 2002, the petitioner commenced his probationary period. On October 6, 2006, he was arrested for allegedly assaulting his girlfriend, Rhonda Dixon, on September 25, 2006, and resisting arrest. The petitioner was subsequently charged with violating his probation based on conduct constituting assault in the third degree, breach of the peace, interfering with a police officer, assault in the second degree, and threatening. On October 26, 2007, after a violation of probation hearing at which the petitioner primarily represented himself with Attorney Omar Williams as standby counsel, the petitioner's probation was

revoked, and he was sentenced to six and one-half years of incarceration. The Appellate Court affirmed the revocation of his probation. See *State* v. *Oliphant*, 115 Conn. App. 542, 973 A.2d 147, cert. denied, 293 Conn. 912, 978 A.2d 1113 (2009).

The petitioner has filed at least six other habeas corpus petitions; three in federal court and three in state court. The petitioner filed petitions for a writ of habeas corpus in federal court on July, 17, 1997, September 12, 2001, and March 19, 2004. All of the petitions were dismissed for failure to exhaust state remedies. The petitioner filed petitions for a writ of habeas corpus in state court on July 8, 1998, July 15, 2002, and November 28, 2003. In his first state petition the petitioner claimed that he received ineffective assistance from his standby counsel, Attorney Moscowitz, and that he did not receive a fair trial because he had to wear shackles during jury selection. After a hearing on the merits, at which the petitioner and Attorney Moscowitz testified, the habeas court dismissed the petition. See *Oliphant* v. *Warden*, Superior Court, judicial district of New Haven, Docket No. CV-98-0414837 (March 9, 2001) (*Pittman, J.*). The petitioner was represented by Attorney Norman Pattis and Attorney Angelica Papastavros in that habeas matter. The dismissal of the petition was affirmed on appeal. See *Oliphant* v. *Commissioner of Correction*, 80 Conn. App. 613, 836 A.2d 471 (2003), cert. denied, 268 Conn. 907, 845 A.2d 412 (2004). The petitioner's second, state petition was dismissed for failure to assert a claim for habeas relief. Attorney John Imhoff, Jr., represented the petitioner in that habeas matter. The petitioner's third petition filed in state court, in which he was represented by Attorney Thomas P. Mullaney, was dismissed for failure to prosecute.

Attorney Rosemarie Weber was appointed to represent the petitioner in the present habeas matter. On

August 13, 2008, Attorney Weber was allowed to withdraw as the petitioner's counsel. Attorney Robert McKay was appointed as substitute counsel. After investigating the petitioner's claims, Attorney McKay has concluded that there are no nonfrivolous issues for trial. On February 16, 2010, he filed the motion for permission to withdraw as counsel, pursuant to Practice Book § 23-41, which is presently before this court. The petitioner was notified of counsel's motion and filed an objection requesting that counsel's motion be denied.

This court has reviewed counsel's motion and supporting memorandum and documentation, including the transcripts of the petitioner's criminal trial and violation of probation hearing, as well as the documentation submitted by the petitioner, and concludes that there are no nonfrivolous issues to be tried. The motion to withdraw is, therefore, granted.

## I

### DISCUSSION

"[A]lthough there is no constitutional right to counsel in habeas proceedings, General Statutes § 51-296 . . . creates a statutory right to counsel . . . for an indigent defendant . . . *in any habeas corpus proceeding arising from a criminal matter* . . . ." (Emphasis in original; internal quotation marks omitted.) *Morgan* v. *Commissioner of Correction*, 87 Conn. App. 126, 132, 866 A.2d 649 (2005). The right to appointed counsel is limited, however, and is only available to petitioners who have nonfrivolous claims. "[I]f counsel finds [the petitioner's] case to be wholly frivolous . . . he should so advise the court and request permission to withdraw." *Anders* v. *California*, 386 U.S. 738, 744, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967); *State* v. *Pascucci*, 161 Conn. 382, 385, 288 A.2d 408 (1971); Practice Book § 23-41 (a). "When counsel has been appointed . . . and

counsel, after conscientious investigation and examination of the case, concludes that the case is wholly frivolous, counsel shall so advise the judicial authority by filing a motion for leave to withdraw from the case." Practice Book § 23-41 (a). Such a motion "must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal." *Anders* v. *California*, supra, 744; *State* v. *Pascucci*, supra, 385; Practice Book § 23-41 (b). A copy of such brief must be provided to the client and a reasonable time given for the client to respond. *State* v. *Pascucci*, supra, 385; Practice Book § 23-41 (c). The court "then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous." *Anders* v. *California*, supra, 744; *State* v. *Pascucci*, supra, 385. If the court finds any legal points arguable on the merits, the case cannot be deemed frivolous, and the court must afford the indigent client the assistance of counsel. *Anders* v. *California*, supra, 744. If the court finds the case to be frivolous, however, it shall grant the motion to withdraw and permit the petitioner to proceed pro se. Practice Book § 23-42 (a).

A

Larceny Conviction

In his pro se petitions, the petitioner claims that his conviction of larceny in the first degree is illegal because (1) the charge was fabricated in retaliation for civil lawsuits that he filed in December, 1994, (2) the conviction violates the double jeopardy clause of the fifth amendment to the United States constitution, as he was made to pay $30 per month prior to being formally charged, (3) he was denied access to the court, (4) he was shackled and handcuffed in front of the jury, (5) he was not given a mental examination before representing himself, (6) standby counsel rendered ineffective assistance, and (7) the prosecutor, judge, and standby counsel all conspired against him.

As noted by Attorney McKay, the majority of the petitioner's claims regarding his larceny conviction have already been litigated either on direct appeal or at a prior habeas trial, which adjudications would bar the petitioner from raising them in the present habeas matter under the doctrine of res judicata. "The doctrine of res judicata provides that a former judgment serves as an absolute bar to a subsequent action involving any claims relating to such cause of action which were actually made or which might have been made. . . . The doctrine . . . applies . . . to state habeas corpus proceedings." (Internal quotation marks omitted.) *Kearney* v. *Commissioner of Correction*, 113 Conn. App. 223, 234, 965 A.2d 608 (2009).

On direct appeal, the Appellate Court held that the trial court "properly found that the [petitioner's] waiver of counsel was knowingly and intelligently made." *State* v. *Oliphant*, supra, 47 Conn. App. 280. It further held that "[t]here [was] no merit to the [petitioner's] claim that standby counsel was ineffective . . . ." Id., 282. The court explained that "after deciding to proceed pro se, [the petitioner] had no constitutional right to the effective assistance of counsel in any capacity." Id., 281. It further found that "there [was] no evidence that standby counsel unduly interfered with the [petitioner's] ability to conduct his trial." Id. It would be wholly frivolous to pursue these claims or similar claims in the present habeas matter, as the Appellate Court has already resolved them on appeal.

Similarly, it would be wholly frivolous to pursue the claims brought in the petitioner's earlier habeas petition adjudicated on the merits absent a showing of newly discovered evidence or facts. See *Kearney* v. *Commissioner of Correction*, supra, 113 Conn. App. 235 ("a second petition alleging the same ground as a previously denied petition will elude dismissal if it alleges grounds not actually litigated in the earlier petition and if it

alleges new facts or proffers new evidence not reasonably available at the time of the earlier petition"). In an earlier habeas case, the court found no merit to the petitioner's claim that Attorney Moscowitz rendered ineffective assistance during the pretrial phase of his case, as "[t]here [was] no evidence other than that [Attorney] Moscowitz rendered entirely effective assistance to the petitioner." *Oliphant* v. *Warden,* supra, Superior Court, Docket No. CV-98-0414837. That court also found that the petitioner had failed to prove that being shackled in front of the jury deprived him of a fair trial. The court held as follows: "The trial court was well within its authority to determine that restraints were necessary to preserve order and security in the courtroom. . . . Moreover, the trial court did so in a way to minimize any prejudice to the petitioner; and it was the petitioner himself who exposed his restraints to potential jurors." (Citation omitted.) Id. The Appellate Court affirmed the habeas court on appeal, holding that its conclusion that the petitioner did not prove his claim regarding the shackles "was legally and logically correct and was supported by the facts in the record." *Oliphant* v. *Commissioner of Correction,* supra, 80 Conn. App. 618.

Attorney McKay's investigation of the petitioner's case did not reveal any newly discovered facts or evidence for bringing another claim of ineffective assistance of counsel against Attorney Moscowitz or for pursuing a claim related to the petitioner having been shackled during jury selection. In his pro se petitions, the petitioner fails to specify any ways in which Attorney Moscowitz rendered ineffective assistance before becoming his standby counsel, and, as noted by the Appellate Court, there is no constitutional right to the effective assistance of standby counsel. *State* v. *Oliphant,* supra, 47 Conn. App. 281. Accordingly, pursuing

any such claims in the present habeas matter would be wholly frivolous.

The petitioner's other claims also fail to present any nonfrivolous issues for trial. In his pro se petitions, the petitioner alleges that he should have been given a mental competency exam prior to being allowed to represent himself. He claims that he was suffering from temporary mental illness. The standard used to determine whether a defendant is competent to stand trial "is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as a factual understanding of the proceedings against him." (Internal quotation marks omitted.) *State* v. *Bigelow*, 120 Conn. App. 632, 641, 994 A.2d 204, cert. denied, 297 Conn. 916, 996 A.2d 278 (2010). "[W]hen a reasonable doubt concerning the defendant's competency is raised, the trial court must order a competency examination." (Internal quotation marks omitted.) Id., 641–42.

As noted by Attorney McKay, there is no merit to the petitioner's claim regarding his alleged incompetency to stand trial. Prior to the petitioner being allowed to represent himself, Attorney Moscowitz requested that the court consider having the petitioner undergo a competency exam because he did not know whether the petitioner appreciated his situation, being exposed to twenty years incarceration on the larceny charge. When the trial court canvassed the petitioner on his right to represent himself, it reviewed the nature of the proceedings and the petitioner's exposure. The petitioner indicated that he understood and even waived a competency exam on the record. There is simply no evidence that the petitioner was not competent to stand trial. As noted by the Appellate Court on the petitioner's direct appeal of his conviction, "[t]he record reveals that the [petitioner] was familiar with legal proceedings

generally and trial tactics specifically." *State* v. *Oliphant*, supra, 47 Conn. App. 279.

Similarly, there is no merit to the petitioner's claims that the larceny charge was fabricated in retaliation for his filing of various civil lawsuits, that his conviction constitutes a double jeopardy violation, or that the judge, prosecutor, and standby counsel conspired against him. A review of the record reveals that there was sufficient evidence for the jury to convict the petitioner of larceny by defrauding a public community, which dispels any claim that the charge was fabricated. In any event, during his cross-examination of various witnesses, the petitioner brought out that the Meriden Department of Social Services and several of its employees were being sued by him. This information was, thus, before the jury, which, nonetheless, found him guilty of larceny. "It is the sole right of the jury as the trier of the facts to draw all reasonable and logical inferences from the facts as it finds them to exist. . . . It is also the absolute right and responsibility of the jury to weigh conflicting evidence and to determine the credibility of the witnesses." (Internal quotation marks omitted.) Id., 283.

Likewise, there is no evidence that the judge, prosecutor, and standby counsel conspired against the petitioner. A review of the record reveals that Attorney Moscowitz assisted the petitioner throughout the proceedings and that the trial court was solicitous of the petitioner's pro se status and provided him substantial leeway during the trial. In short, no evidence of collusion is apparent from the record, and Attorney McKay has not otherwise uncovered any such evidence. Accordingly, this claim is frivolous.

The petitioner's double jeopardy claim also lacks merit. "The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or

shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . . . The double jeopardy clause is applicable to the states through the due process clause of the fourteenth amendment. . . . [T]he [d]ouble [j]eopardy [c]lause consists of several protections: It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense. . . . These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense." (Internal quotation marks omitted.) *State* v. *Jay*, 124 Conn. App. 294, 327, 4 A.3d 865 (2010), cert. denied, 299 Conn. 927, 12 A.3d 571 (2011). The petitioner appears to claim that he was tried and punished twice for the same offense. Anne Marie Whitney, the director of the Department of Social Services for the city of Meriden, testified at the petitioner's criminal trial that a state hearing occurred in the petitioner's case to determine the identity of Jerome Martin, the name under which the petitioner had applied for and received benefits from Meriden. At that hearing, it was determined that the petitioner was actually Anthony Oliphant and that he had been receiving benefits in Hartford. Whitney explained that despite the determination made at the state hearing, the petitioner could and did reapply for aid with the proper identification because "an individual cannot be denied benefits until they are convicted of fraud . . . at this point in time it's alleged fraud, a person has not been convicted . . . ." Helen Shappy, the social worker who handled the petitioner's case, testified at the petitioner's criminal trial that "[p]olicy indicates that anyone who has an overpayment must have 10 percent of their budget deducted." Pursuant to that policy, $30 was deducted from the amount that the petitioner began receiving upon reapplying for benefits in February, 1995.

Contrary to the petitioner's assertion, he was neither tried nor punished twice for the same crime. The state hearing was civil in nature, and as explained by Whitney, it did not give rise to a "conviction" for fraud. "It is well settled that prosecutions or convictions for double jeopardy purposes arise *only* from proceedings that are 'essentially criminal.'" (Emphasis added.) *State* v. *Burnell*, 290 Conn. 634, 645, 966 A.2d 168 (2009). Additionally, "[a civil or administrative] sanction that primarily serves a legitimate remedial purpose and is related rationally to that purpose does not give rise to a double jeopardy violation." *State* v. *Tuchman*, 242 Conn. 345, 352, 699 A.2d 952 (1997), cert. dismissed, 522 U.S. 1101, 118 S. Ct. 907, 139 L. Ed. 2d 922 (1998), overruled in part on other grounds by *State* v. *Crawford*, 257 Conn. 769, 779–80 and n.6, 778 A.2d 947 (2001), cert. denied, 534 U.S. 1138, 122 S. Ct. 1086, 151 L. Ed. 2d 985 (2002). Requiring a recipient of benefits to pay back any overpayment received by him or her serves a remedial purpose, as it allows the city to recover its losses. That is, it is an administrative mechanism for making the city whole rather than a criminal sanction for punishing wrongdoers. Accordingly, such a repayment schedule does not constitute punishment for double jeopardy purposes. An independent police investigation led to the petitioner's trial and punishment for larceny in the first degree. It should also be noted that the trial court, in ordering the petitioner to make restitution to the Department of Social Services in Meriden, indicated on the record that he should receive credit for any amounts that he already repaid to the city. In short, the petitioner's double jeopardy claim fails to present any nonfrivolous issues for trial.

Lastly, the petitioner's claim that he was denied access to the courts is wholly frivolous. In his pro se petitions, the petitioner alleges that he was denied access to the courts because he was denied (1) access

to a law library, (2) participation in sidebar discussions during the course of his trial, and (3) a continuance to hire a private attorney and to prepare his defense.

"In *Bounds* v. *Smith*, 430 U.S. 817, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977), the United States Supreme Court concluded that the fundamental [federal] constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries *or* adequate assistance from persons trained in the law. . . . The court further concluded that the provision of adequate law libraries is just one of the many methods of satisfying a defendant's right of meaningful access to the courts." (Citation omitted; emphasis in original.) *State* v. *Fernandez*, 254 Conn. 637, 653–54, 758 A.2d 842 (2000), cert. denied, 532 U.S. 913, 121 S. Ct. 1247, 149 L. Ed. 2d 153 (2001). "The right to self-representation in criminal proceedings 'does not carry with it a right to state-financed library resources where state-financed legal assistance is available [to satisfy the dictates of *Bounds*].' *Spates* v. *Manson*, [644 F.2d 80, 85 (2d Cir. 1981)] (finding 'no adequate basis . . . for a conclusion that the programs available to inmates at [a prison in] Somers [Connecticut] do not provide the kind of support and assistance necessary to enable those who wish to act pro se to do so, whether by formal appointment of a standby attorney . . . or otherwise' . . . see also *Santiago* v. *Commissioner of Correction*, 39 Conn. App. 674, 681, 667 A.2d 304 (1995) ('[p]ractices or regulations are invalid under *Bounds* only if the prisoner is denied access to both legal assistance *and* legal materials' . . .)." (Emphasis in original.) *State* v. *Fernandez*, supra, 654. "A criminal defendant who knowingly and intelligently waives the right to counsel and who has been appointed standby counsel is not constitutionally entitled to access to a law library. Rather, the appointment of standby counsel

satisfies the state's obligation to provide the defendant with access to the courts." Id., 658.

Since the petitioner was afforded standby counsel, his claim regarding his access to a law library is inapposite. He was provided meaningful access to the courts by virtue of the appointment of standby counsel. In any event, the record reveals that the trial court sought to ensure that the petitioner had access to a law library. For example, during jury selection the trial court, at the petitioner's request, instructed the clerk to request on the mittimus that the petitioner have use of the law library, and during the trial, the trial court contacted the deputy warden regarding the availability of the law library to the petitioner. The warden informed the court that the petitioner's requests to use the law library had all been approved but that the petitioner never followed through on them. The record further reveals that Attorney Moscowitz provided the petitioner with legal materials upon request. Consequently, this claim lacks any merit.

The petitioner's claim that he was denied access to the courts by being denied participation in sidebar discussions during his trial is also feckless. As noted by the trial court in its decision on the petitioner's motion for allocution of sentencing: "Very few sidebar conferences occurred during the trial. The majority of those held were at the request of Attorney Moscowitz with apparent acquiescence of the [petitioner]. The court recalls no request by the [petitioner] to participate therein or any claim that he was prejudiced by nonparticipation. In point of fact, he was not prejudiced, matters discussed, for the most part, being procedural or of an administrative nature." A review of the record supports the trial court's findings. The petitioner never requested to participate in the sidebar discussions. On one occasion, he even asked Attorney Moscowitz to approach the bench on his behalf. Moreover, for the

most part, the sidebar conferences consisted of procedural or administrative discussions, and there is no evidence in the record that the petitioner was prejudiced by nonparticipation in the discussions. All discussions of substantive matters resulted in the jury being excused and were conducted on the record.

Likewise, the petitioner's claim that the trial court's denial of his request for a continuance to hire private counsel and to prepare his defense deprived him of access to the courts is devoid of merit. "A trial court possesses broad discretion in deciding whether to grant or deny a motion for a continuance." *State* v. *Youngs*, 97 Conn. App. 348, 368, 904 A.2d 1240, cert. denied, 280 Conn. 930, 909 A.2d 959 (2006). There are "several factors that a trial court may consider when exercising its discretion in granting or denying a motion for continuance. . . . These factors include the likely length of the delay . . . the impact of delay on the litigants, witnesses, opposing counsel and the court . . . the perceived legitimacy of the reasons proffered in support of the request . . . [and] the likelihood that the denial would substantially impair the defendant's ability to defend himself . . . ." (Internal quotation marks omitted.) *State* v. *Lopez*, 280 Conn. 779, 787, 911 A.2d 1099 (2007).

On the third day of jury selection, the petitioner, after having decided to represent himself, requested a continuance because he "[was] going to retain private counsel." The trial court denied his request but stated that "if a private counsel should enter the case . . . [it would] consider any request the private counsel might have in that connection." The petitioner also requested a continuance on that day so that he could prepare. Again, the trial court denied the request. That the trial court fairly exercised its discretion in denying the petitioner's requests for a continuance is beyond debate. Until the first day of jury selection, the petitioner had

been represented by Attorney Moscowitz. On the first day of jury selection, he decided to represent himself, and the trial court appointed Attorney Moscowitz as standby counsel. Four jurors had been picked at the time of the petitioner's requests for a continuance. In denying the petitioner's requests, the trial court did not deny the petitioner access to the courts. The petitioner could have hired a private attorney despite the lack of a continuance; however, at no point during the trial did the petitioner hire a private attorney. Moreover, the petitioner had the assistance of standby counsel throughout the trial. There is no evidence in the record that the denial of the requests for a continuance impaired the petitioner's ability to defend himself. The trial court gave the petitioner ample time to prepare as the need arose during the course of the trial.

B

Violation of Probation

In his pro se petitions, the petitioner alleges that his violation of probation conviction is illegal because (1) the trial court improperly allowed his private attorney to withdraw without prior notice to him, (2) the trial court improperly denied his motion for a continuance to hire a private attorney, (3) he was denied any opportunity to post bail, (4) he was denied his right to a speedy trial, (5) Attorney Williams rendered ineffective assistance, (6) he was not allowed to call defense witnesses, (7) he was illegally arrested, (8) the charges were fabricated in retaliation for citizen complaints that he filed against the police, and (9) the conviction violates the double jeopardy clause, as the criminal charges forming the basis for the violation of probation charge were subsequently dropped and he was allegedly sentenced twice in the same case.

As noted by Attorney McKay, the petitioner's claims do not present any nonfrivolous issues for trial. The

petitioner's claims that the trial court improperly allowed his private attorney to withdraw without prior notice to him and that it improperly denied his motion for a continuance to hire private counsel are meritless. "Decisions regarding the withdrawal of counsel are evaluated under an abuse of discretion standard." *Tolman* v. *Banach*, 82 Conn. App. 263, 265, 843 A.2d 650 (2004). On July 9, 2007, the trial court allowed the petitioner's then counsel, Attorney Diane Polan, to withdraw her appearance. Attorney Polan, who was the third attorney to represent the petitioner, stated on the record that she filed a motion to withdraw on July 5, 2007, and that subsequent to filing it she received correspondence from the petitioner in which he indicated that he did not trust her and did not want her to continue as his attorney. After reviewing Attorney Polan's nineteen paragraph motion, the trial court granted it.

Pursuant to Practice Book § 3-10 (a), "[n]o motion for withdrawal of appearance shall be granted unless good cause is shown and until the judicial authority is satisfied that . . . the party represented by the attorney was served with the motion and the notice required by this section . . . ." In the case of criminal matters, § 3-10 requires notice be sent to the represented party advising him or her of the following: "(b) (1) the attorney is filing a motion which seeks the court's permission to no longer represent the party in the case; (2) the date and time the motion will be heard; (3) the party may appear in court on that date and address the court concerning the motion . . . [and (c) (3)] that if the motion to withdraw is granted the client should request court appointed counsel, obtain another attorney or file an appearance on his or her own behalf with the court and be further advised that if none is done, there may be no further notice of proceeding and the court may act. . . ."

The record is silent as to whether Attorney Polan sent the requisite notice to the petitioner. It does reflect, however, that the petitioner was present when counsel's motion was heard by the trial court and that he had an opportunity to be heard on the motion. He did not address the motion other than to mention Attorney Polan's alleged deception. Notably, he voiced no objection to her withdrawal. Moreover, he indicated that his family would be hiring private counsel. Based upon the above, there is no evidence that the trial court abused its discretion in granting Attorney Polan's motion to withdraw as the petitioner's counsel or that the petitioner suffered any harm, if in fact he did not receive the notice required by Practice Book § 3-10. Accordingly, this claim is unworthy of additional review by the habeas court.

Similarly, the petitioner's claim that the trial court improperly denied his motion for a continuance to hire private counsel is bereft of merit. As noted above, "[a] trial court possesses broad discretion in deciding whether to grant or deny a motion for a continuance." *State* v. *Youngs*, supra, 97 Conn. App. 368. After the trial court allowed Attorney Polan to withdraw as the petitioner's counsel, it appointed the public defender's office to represent the petitioner and also continued the case until September 17, 2007, in order to afford the petitioner an opportunity to hire private counsel as desired. On August 31, 2007, the trial court informed the petitioner once again that he had until September 17, 2007, to hire private counsel. By September 17, 2007, the petitioner had not hired private counsel. Because the case had been continued seventeen times and was over nine months old, the trial court scheduled the petitioner's violation of probation hearing for September 24, 2007. On September 24, 2007, the petitioner still had no private counsel. He requested a two week continuance to hire private counsel, which the trial

court denied, noting that Attorney Williams was ready to proceed on the petitioner's behalf, that the matter had been pending for quite some time and that the petitioner had been afforded "more than adequate time . . . to hire private counsel . . . ."

There are no legitimate grounds for the petitioner's claim that the trial court improperly denied his request for a continuance. The trial court appropriately exercised its discretion in denying his request. The petitioner had more than two months to hire private counsel after the trial court allowed Attorney Polan to withdraw as the petitioner's counsel.

The petitioner's claim that he was denied any opportunity to post bond is also frivolous, as it has no basis in fact. On August 6, 2007, the petitioner complained about not being able to post bond. On August 31, 2007, he again complained about his bond, stating that it was "inappropriate" and "highly prejudicial." From these comments it appears that the petitioner could not afford to post bond. He had a remedy available to him. As explained to the petitioner by the trial court on August 31, 2007, the petitioner's attorney, once he hired one, could seek a bond modification. Moreover, although "the bail provision of § 8 of article first of our constitution makes clear that it was intended that in all cases . . . bail in a reasonable amount should be ordered . . . a reasonable amount is not necessarily an amount within the power of an accused to raise." *State* v. *Menillo*, 159 Conn. 264, 269, 268 A.2d 667 (1970).

The petitioner's claim that he was denied his right to a speedy trial also has no basis in fact. Attached to one of the petitioner's pro se petitions is an inmate grievance form dated December 18, 2006, in which the petitioner complains that his requests that the Department of Correction file a speedy trial motion on his

behalf have gone unanswered. The Department of Correction rejected the grievance on the ground that the petitioner, as an unsentenced inmate, did not qualify for a speedy trial motion at that time. The Department of Correction properly denied the petitioner's requests for a speedy trial motion because at that time the petitioner was not serving a term of imprisonment in a correctional facility and he had only been incarcerated on the pending charges for just over two months. See General Statutes § 54-82c (a) ("a person [who] has entered upon a term of imprisonment in a correctional institution of this state and, during the continuance of the term of imprisonment, there is pending in this state any untried indictment or information against such prisoner"); see also Practice Book § 43-39 (c) ("the trial of a defendant charged with a criminal offense on or after July 1, 1985, shall commence within twelve months from the filing of the information or from the date of the arrest, whichever is later"). Apart from the aforementioned grievance, there is no evidence that the petitioner otherwise filed a motion for a speedy trial.

The petitioner next claims that he was denied the effective assistance of counsel by Attorney Williams. "To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. To satisfy the performance prong, a claimant must demonstrate that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both

prongs are satisfied." (Citations omitted; internal quotation marks omitted.) *Small* v. *Commissioner of Correction*, 286 Conn. 707, 712–13, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008).

The petitioner does not identify any particular way in which Attorney Williams rendered ineffective assistance. Attorney McKay was unable to articulate any deficiencies in the representation afforded by Attorney Williams as both the petitioner's counsel and standby counsel. Neither can this court. Attorney Williams represented the petitioner during the first and second days of the violation of probation hearing. On the second day, the petitioner informed the trial court that he wanted to represent himself and have Attorney Williams appointed as standby counsel. After a thorough canvass, the trial court allowed the petitioner to exercise his right to self-representation. As noted previously, there is no constitutional right to the effective assistance of standby counsel. *State* v. *Oliphant*, supra, 47 Conn. App. 281. Accordingly, any claim of ineffective assistance against Attorney Williams as standby counsel is wholly frivolous. In any event, the record reveals that as standby counsel Attorney Williams consulted with the petitioner and provided the petitioner with legal materials as requested by the petitioner. There is no evidence that Attorney Williams unduly interfered with the petitioner's ability to conduct his trial. See id. ("the usual context in which standby counsel has abridged a defendant's right to conduct the trial occurs when standby counsel is overly zealous and interferes with the defendant's ability to conduct his trial"). In short, the petitioner's claim of ineffective assistance of counsel against Attorney Williams also does not present any nonfrivolous issues for trial.

Similarly, the petitioner's claim that he was not allowed to call defense witnesses does not merit further

review by the habeas court. The petitioner was precluded from recalling Rhonda Dixon and from calling the following New Haven police officers as witnesses: Officers Joyner, Smith, Davis, and Howze. "The defendant's right to present his own witnesses to establish a defense . . . is a fundamental element of due process of law." (Internal quotation marks omitted.) *State* v. *Salters*, 89 Conn. App. 221, 226, 872 A.2d 933, cert. denied, 274 Conn. 914, 879 A.2d 893 (2005). "[T]he right of a defendant to present a defense is [however] subject to appropriate supervision by the trial court in accordance with established rules of procedure and evidence . . . ." (Internal quotation marks omitted.) Id., 227.

The petitioner's claim regarding Dixon was addressed by the Appellate Court on direct appeal, in which the court found "that the restrictions placed on the defendant were not clearly prejudicial, and, therefore, the court did not abuse its discretion." *State* v. *Oliphant*, supra, 115 Conn. App. 551. Since the Appellate Court already addressed this claim, pursuing it in the present habeas matter would be wholly frivolous. As for the other witnesses, after the petitioner made an offer of proof as to each, the trial court precluded their testimony on the ground that it could not discern any relevant or material testimony to be offered by them as to any issue in the case. "A trial court's ruling on the admissibility of evidence is afforded great deference." *State* v. *Valentine*, 255 Conn. 61, 69, 762 A.2d 1278 (2000). The petitioner was charged with violating his probation based upon conduct that occurred on September 25, 2006, and October 6, 2006. The New Haven police were not involved in any of the incidents that occurred on those dates. Accordingly, the trial court did not abuse its discretion in precluding the testimony of the New Haven officers. A review of the record demonstrates that despite precluding the testimony of the New Haven police officers, the trial court provided the

petitioner a meaningful opportunity to present a defense. Apart from these witnesses, the petitioner presented the testimony of eleven witnesses as well as testifying on his own behalf. Accordingly, this claim lacks any merit.

The petitioner's next claims are that he was illegally arrested and that the charges were fabricated in retaliation for his filing of citizen complaints against the Hamden Police Department. Neither claim presents any nonfrivolous issues for trial.

The petitioner alleges that his arrest was illegal primarily because the Hamden police lacked jurisdiction to arrest him at his residence in New Haven for an offense that allegedly occurred in New Haven. The trial court addressed this claim, holding that "what the [petitioner] claims is his alleged illegal arrest . . . may be . . . constitutionally allowable even if it was not specifically authorized by [General Statutes §] 7-281." Moreover, it held that "even if the arrest of the [petitioner] was illegal it would have no effect on the [petitioner's] revocation of probation proceeding. First, under *State* v. *Fleming*, [198 Conn. 255, 502 A.2d 886, cert. denied, 475 U.S. 1143, 106 S. Ct. 1797, 90 L. Ed. 2d 342 (1986)], the charges would not be dismissed. Secondly, evidence from the illegal arrest would not be excluded at the proceeding because under *Payne* v. *Robinson*, [207 Conn. 565, 541 A.2d 504, cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988)], the exclusionary rule does not apply to a revocation of probation proceeding. Third . . . it is conduct, not the fact of arrest, which is at issue in a violation of probation proceeding." The court further noted that "the [petitioner] would not have had the right to resist even an unlawful arrest" and that "[a]n officer exceeding his [jurisdictional] authority is not the equivalent of an officer acting outside the scope of what he's employed to do."

The trial court correctly held that the petitioner's alleged illegal arrest had no bearing on whether he violated his probation. The petitioner was charged with violating his probation based upon his alleged assault of Dixon and his alleged assault and interference with the police who arrested him for allegedly assaulting Dixon. As noted by the trial court, even if the petitioner's arrest was technically illegal, it would not bar his subsequent prosecution for the underlying offense. "Where the fairness of a subsequent prosecution has not been impaired by an illegal arrest, neither the federal nor the Connecticut constitution requires dismissal of the charges or a voiding of the resulting conviction." *State v. Fleming*, supra, 198 Conn. 263. Additionally, even if the petitioner's arrest was illegal, it would not constitute a defense to the charges arising from the petitioner's resistance. Pursuant to General Statutes § 53a-23, "[a] person is not justified in using physical force to resist an arrest by a reasonably identifiable peace officer . . . whether such arrest is legal or illegal." "[Section] 53a-23 was intended to require an arrestee to submit to an arrest, even though he believes, and may ultimately establish, that the arrest was without probable cause or was otherwise unlawful." (Emphasis omitted; internal quotation marks omitted.) *State v. Vilchel*, 112 Conn. App. 411, 421, 963 A.2d 658, cert. denied, 291 Conn. 907, 969 A.2d 173 (2009).

As noted by the trial court, an officer who acts outside his jurisdiction is not necessarily acting outside the scope of what he is employed to do. "The phrase in the performance of his official duties means that the police officer is simply acting within the scope of what [he] is employed to do. The test is whether the [police officer] is acting within that compass or is engaging in a personal frolic of his own." (Internal quotation marks omitted.) *State v. Colon*, 117 Conn. App. 150, 155, 978 A.2d 99 (2009). The record reveals that the arresting

officers believed that the petitioner's residence was located in Hamden and that they were in uniform and not engaging in a personal frolic.

As for the petitioner's claim that the charges were fabricated in retaliation for his filing of citizen complaints against the Hamden Police Department, there is simply no basis in fact for this claim. The petitioner notably did not file any citizen complaints before the alleged assault on Dixon. It appears that he filed a citizen complaint subsequent thereto, which complaint arrived at the Hamden Police Department on October 7, 2006, the day following his arrest. In any event, there was sufficient evidence to support a finding that the petitioner had violated his probation. As stated by the Appellate Court on direct appeal: "[T]he [trial] court had before it sufficient evidence to support its finding, by a fair preponderance of the evidence, that the [petitioner] committed the crimes of assault in the third degree, assault in the second degree, threatening and interfering with an officer. Accordingly, the court properly found that the [petitioner] had violated his probation." *State* v. *Oliphant*, supra, 115 Conn. App. 553–54. There is no shred of evidence supporting the petitioner's claim that the Hamden police fabricated the charges based on his postarrest complaint.

Lastly, the petitioner alleges that his conviction is a double jeopardy violation because the criminal charges forming the basis for the violation of probation charge were subsequently dropped and he was sentenced twice in the same case. This claim is wholly frivolous. "[T]he doctrine of double jeopardy is not applicable to probation revocation proceedings because, in a revocation proceeding, the defendant is not exposed to criminal prosecution for the same offense following conviction or acquittal." *State* v. *Gauthier*, 73 Conn. App. 781, 793, 809 A.2d 1132 (2002), cert. denied, 262 Conn. 937, 815

A.2d 137 (2003). "Revocation is a continuing consequence of the original conviction from which probation was granted." (Internal quotation marks omitted.) *State* v. *McDowell*, 242 Conn. 648, 654, 699 A.2d 987 (1997). Consequently, the petitioner was not punished twice for the same offense. Moreover, "the outcome of a criminal proceeding simply has no relevance whatsoever to an independent determination on the same facts made in a revocation of probation hearing." *State* v. *Gauthier*, supra, 794. Accordingly, it is of no consequence that the state did not pursue the criminal charges against the petitioner. In short, the petitioner's double jeopardy claim is legally unsupportable.

## C

### Other Claims

In addition to the aforementioned claims, Attorney McKay reviewed whether the petitioner has any additional nonfrivolous claims of ineffective assistance of counsel against his former habeas and appellate attorneys. He was unable to identify any such claims.

"[W]hen a petitioner is claiming ineffective assistance of appellate counsel, he must establish that there is a reasonable probability that but for appellate counsel's error, the petitioner would have prevailed in his direct appeal." (Internal quotation marks omitted.) *Turner* v. *Commissioner of Correction*, 118 Conn. App. 565, 568, 984 A.2d 793 (2009), cert. denied, 296 Conn. 901, 991 A.2d 1104 (2010). Although the amended petition filed on the petitioner's behalf by Attorney Weber raises claims against the petitioner's appellate counsel in his direct appeal of his larceny conviction and in his appeal of his earlier habeas matter, they do not present any nonfrivolous issues for trial. In both claims, the petitioner alleges that appellate counsel did not raise "all appellate claims." "The determination of which issues to present, and which issues not to present, on an appeal

is by its nature a determination committed to the expertise of appellate counsel, and not to his client. . . . By that determination, appellate counsel seeks to focus the concern of the appellate court on those issues which he deems to be most persuasive, and thus does appellate counsel most effectively present his client's appeal." (Citation omitted.) *Valeriano* v. *Bronson*, 12 Conn. App. 385, 390, 530 A.2d 1100 (1987), aff'd, 209 Conn. 75, 546 A.2d 1380 (1988). "[A] habeas court will not, with the benefit of hindsight, [second-guess] the tactical decisions of appellate counsel. Legal contentions, like the currency, depreciate through over-issue. . . . [M]ultiplying assignments will dilute and weaken a good case and will not save a bad one. . . . The effect of adding weak arguments will be to dilute the force of the stronger ones." (Internal quotation marks omitted.) *Farnum* v. *Commissioner of Correction*, 118 Conn. App. 670, 679, 984 A.2d 1126 (2009), cert. denied, 295 Conn. 905, 989 A.2d 119 (2010). Accordingly, these claims against appellate counsel are unworthy of further review.

As for the petitioner's prior habeas counsel, to prove ineffective assistance "[t]he petitioner will have to prove that . . . the prior habeas counsel, in presenting his claims, was ineffective and that effective representation by habeas counsel establishes a reasonable probability that the habeas court would have found that [the petitioner] was entitled to reversal of the conviction and a new trial . . . ." (Internal quotation marks omitted.) *Lapointe* v. *Commissioner of Correction*, 113 Conn. App. 378, 394, 966 A.2d 780 (2009). Based upon this court's review of the petitioner's underlying claims attacking the legality of his larceny conviction, there is no reasonable probability that the habeas court would have reversed the petitioner's conviction and granted him a new trial had his counsel done anything differently. Consequently, any claims against the petitioner's

prior habeas counsel would not present any nonfrivolous issues for trial.

In his objection to counsel's motion to withdraw, the petitioner argues that the fact that Attorney Weber filed an amended petition and that a trial date was set demonstrates that his claims are not frivolous. Neither an amended petition nor a trial date mean that a petition contains nonfrivolous claims. This court has thoroughly reviewed the petitioner's claims, including those raised in the amended petition, and has found them to be wholly frivolous.

## II

## CONCLUSION

Because the court concludes that there are no nonfrivolous issues to be tried, the motion to withdraw is granted. Substitute counsel will not be appointed. The petitioner may represent himself at the habeas trial if he wishes to pursue this matter further. A blank appearance form shall accompany the copy of this decision that is sent to the petitioner. If the petitioner intends to pursue this matter further and represent himself, he shall file an appearance on or before March 1, 2011. By separate notice, this matter will be scheduled for a status conference (which the petitioner will appear at via videoconference) and a trial date will be assigned.