ANTHONY W. OLIPHANT *v.* COMMISSIONER OF
CORRECTION
(AC 22014)

Lavery, C. J., and Dranginis and Hennessy, Js.

Argued October 1—officially released December 23, 2003

*Richard C. Marquette*, special public defender, for
the appellant (petitioner).

*Eileen F. McCarthy*, assistant state's attorney, with
whom, on the brief, were *Michael Dearington*, state's
attorney, and *Mary Elizabeth Baran*, senior assistant
state's attorney, for the appellee (respondent).

*Opinion*

PER CURIAM. The petitioner, Anthony W. Oliphant,
appeals from the judgment of the habeas court dismiss-
ing his amended petition for a writ of habeas corpus. On
appeal, the petitioner claims that the court improperly
concluded that he failed to meet his burden of proof
on his claims that (1) it was an abuse of discretion for
the trial court to require that he wear shackles during
voir dire, (2) it was an abuse of discretion for the trial
court to order him to appear at trial wearing a prison
uniform and (3) it was a violation of his constitutional

right of access to the court to deny him the use of the law library in the correctional facility in which he was housed during the preparation for his trial. We affirm the judgment of the habeas court.

The petitioner was convicted, after a jury trial, of larceny in the first degree by defrauding a public community in violation of General Statutes § 53a-122 (a) (4). He was sentenced to fifteen years incarceration, suspended after seven years. This court affirmed the conviction.[1] Thereafter, the petitioner filed a petition for a writ of habeas corpus, in part because he had been forced to wear restraints during jury selection. After an evidentiary hearing, the habeas court dismissed his petition on the ground that "the petitioner has failed to prove any of the allegations in his petition for a writ of habeas corpus." From that ruling, the petitioner appeals.

At the outset, we set forth the applicable standard of review. "When the conclusions of the habeas court are attacked on appeal, they are reviewed to determine whether they are legally and logically supported by the facts or involve an erroneous application of law materially relevant to the case." *Ostoloza* v. *Warden*, 26 Conn. App. 758, 762, 603 A.2d 768, cert. denied, 222 Conn. 906, 608 A.2d 692 (1992). Applying that standard to the facts of the present case, we agree with the court's conclusion that the petitioner failed to prove any of the allegations in his petition for a writ for habeas corpus.

I

The petitioner first claims that the shackles interfered with his state and federal constitutional rights to a fair trial.[2] We disagree.

---

[1] The facts underlying the petitioner's arrest and conviction are set forth in detail in *State* v. *Oliphant*, 47 Conn. App. 271, 702 A.2d 1206 (1997), cert. denied, 244 Conn. 904, 714 A.2d 3 (1998).

[2] The petitioner also claims that the trial court failed to hold a hearing pursuant to Practice Book § 42-46 prior to ordering his restraint during jury

The habeas court reviewed the relevant law regarding a criminal defendant's right to be free of restraints during trial. See Practice Book § 42-46;[3] *State* v. *Taylor*, 63 Conn. App. 386, 394, 776 A.2d 1154 (court may consider various factors when exercising discretion to order defendants shackled), cert. denied, 257 Conn. 907, 777 A.2d 687, cert. denied, 534 U.S. 978, 122 S. Ct. 406, 151 L. Ed. 2d 308 (2001); *State* v. *Robinson*, 38 Conn. App. 598, 603, 662 A.2d 1295 (1995), rev'd on other grounds, 237 Conn. 238, 676 A.2d 384 (1996). It then concluded that "[t]he trial court was well within its authority to determine that restraints were necessary to preserve order and security in the courtroom."

Our review of the record reveals that the court properly determined that the petitioner did not prove his allegations on that claim. The trial court adequately detailed its rationale for requiring the petitioner's restraint during voir dire. The trial court stated: "During the entire period of selection . . . the record should be clear that the defendant has been shackled, has remained in shackles throughout the proceedings. . . .

selection. That claim was not raised in the habeas petition. On the basis of the analysis set forth in part II, we will not review that argument.

[3] Practice Book § 42-46 provides: "(a) Reasonable means of restraint may be employed if the judicial authority finds such restraint reasonably necessary to maintain order. If restraints appear potentially necessary *and the circumstances permit*, the judicial authority *may* conduct an evidentiary hearing outside the presence of the jury before ordering such restraints. The judicial authority may rely on information other than that formally admitted into evidence. Such information shall be placed on the record outside the presence of the jury and the defendant given an opportunity to respond to it.

"(b) In ordering the use of restraints or denying a request to remove them, the judicial authority shall detail its reasons on the record outside the presence of the jury. The nature and duration of the restraints employed shall be those reasonably necessary under the circumstances. All reasonable efforts shall be employed to conceal such restraints from the view of the jurors. Upon request, the judicial authority shall instruct the jurors that restraint is not to be considered in assessing the evidence or in the determination of the case." (Emphasis added.)

[I]n denying [the petitioner's] request that the shackles be removed, the court has relied on its own observations of [the petitioner's] conduct during these proceedings and also on information that was submitted to it from independent sources. That information includes loud and very obstreperous conduct by the [petitioner] in court last week. . . . It was also called to the court's attention that the [petitioner] physically, or at least attempted, to assault his then counsel . . . . The attitude of the [petitioner] displayed during these times has bordered at times on the menacing if not threatening. It was called to the court's attention that the [petitioner] recently issued what might be defined as a veiled threat directed at one of the [judicial marshals] that [would] be implemented when [the petitioner] obtained his liberty. For all of these reasons, and under all of the circumstances, the court believes that the shackles were and have remained necessary throughout these proceedings and that, as the record will note, was the recommendation of [the judicial marshal in charge at the courthouse], both to me outside of the courtroom and yesterday in the courtroom when he testified." The conclusion of the habeas court, therefore, is supported by the facts found in the record.

The petitioner also argues that the shackling order was unduly prejudicial and that this alleged prejudice further deprived him of a fair trial. The habeas court stated that the trial court had imposed the restraints "in a way to minimize any prejudice to the petitioner, and it was the petitioner himself who exposed the restraints to potential jurors." The record reveals that instead of taking advantage of the trial court's offer to conceal the shackles by conducting voir dire from a seated position,[4] the petitioner chose to walk about

---

[4] The following colloquy took place between the court and the petitioner:

"The Court: All right. Well, I am going to instruct the jury with regard to your shackles, then, as I am required to do. But initially, at least, if you choose to remain seated, I would postpone that.

the courtroom and call attention to the shackles while questioning the prospective jurors. Significantly, and contrary to the petitioner's assertions, the venire-persons indicated that the shackles did not affect their objectivity.[5] Consequently, the habeas court's conclu-

"[The Petitioner]: There is no way to be seated, Your Honor, with regard to the jury instructions."

[5] The following colloquy, in relevant part, took place between the petitioner and one venireperson:

"[The Petitioner]: . . . As you see me standing before you today, wouldn't you have to think there is something wrong with me shackled here before you today if it's supposed to be a fair and, you know, a fair hearing, fair proceeding. Wouldn't you say something is wrong because I am in chains?

"[The Venireperson]: Yeah, I would.

"The Court: Well, there is a reason for that sir. . . .

"[The Venireperson]: Right.

"The Court: It has nothing to do with the trial of this case, as I told you earlier.

"[The Venireperson]: Right. I don't know all the circumstances."

The venireperson was accepted by the petitioner and the state.

The following colloquy, in relevant part, took place between the petitioner and a second venireperson:

"[The Petitioner]: Well, tell me something. Do you think seeing me the way I am, do you think I'm innocent?

"[The Venireperson]: That would be a decision I would have to make after hearing all the testimony.

\* \* \*

"[The Petitioner]: . . . Do you think you can honestly be fair, as I stand here now with prison garb on, shackled?

"[The Venireperson]: As the judge mentioned, shackles don't come into play at this time."

The following colloquy, in relevant part, took place between the petitioner and a third venireperson:

"[The Petitioner]: . . . The question is, do you think you can be impartial to me? I mean truthfully?

"[The Venireperson]: Truthfully?

"[The Petitioner]: Truthfully, looking at me as I am now?

"[The Venireperson]: Truthfully, yeah, because I would want to know the situation that was brought in front of me. And I would want to make sure I knew all my bases. And I would want to make sure I knew absolutely all the information that would be needed before I make a decision, you know.

\* \* \*

"[The Petitioner]: Tell me, how do you feel if you were to see other people not come up here handcuffed and shackled? Would that make you feel better? . . .

sion that the petitioner did not prove the allegations in support of his claim was legally and logically correct and was supported by the facts in the record.

## II

The petitioner also claims that the habeas court improperly concluded that he failed to support his allegation that the trial court abused its discretion by ordering him to appear at trial wearing a prison uniform and that his constitutional right of access to the court was not violated when he was denied the use of the law library in the correctional facility in which he was housed during the preparation for his trial. The petitioner, however, failed to raise either of those claims in his habeas petition. They were, therefore, not properly preserved for this court's review.

"This court is not bound to consider claimed errors unless it appears on the record that the question was distinctly raised . . . and was ruled upon and decided by the court adversely to the appellant's claim." (Internal quotation marks omitted.) *Copeland* v. *Warden*, 26 Conn. App. 10, 13–14, 596 A.2d 477 (1991), aff'd, 225 Conn. 46, 621 A.2d 1311 (1993). Although the petitioner's counsel briefly discussed one of those claims at oral argument in the habeas court, that court neither ruled on nor decided any of those claims. Further, the petitioner failed to raise those issues in his habeas petition. "To review [them] now would amount to an ambuscade of the [habeas] judge." (Internal quotation marks omitted.) Id., 14.

The judgment is affirmed.

---

"[The Venireperson]: I don't think so. . . .

"[The Petitioner]: You don't think so?

"[The Venireperson]: I don't think so, no. I think, as I already have stated . . . it's not you . . . . I just want to be presented with the facts and everything that would be brought out. And then I would make my own decision on that."