ANTHONY W. OLIPHANT *v.* COMMISSIONER
OF CORRECTION
(AC 33736)

Lavine, Keller and Harper, Js.

Argued May 21—officially released October 29, 2013

*Albert J. Oneto IV*, assigned counsel, with whom, on the brief, was *Albert J. Oneto III*, assigned counsel, for the appellant (petitioner).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Brenda Hans*, assistant state's attorney, for the appellee (respondent).

*Opinion*

PER CURIAM. The petitioner, Anthony W. Oliphant, returns to this court for a third time following his 1995 larceny conviction for simultaneously receiving welfare benefits from the cities of Hartford and Meriden.[1] By the petitioner's own reckoning, he has filed in a self-represented capacity at least thirteen petitions for a writ of habeas corpus in the trial court and four petitions for a writ of habeas corpus in the federal District Court. Four of the petitions filed in the trial court were consolidated there and are the subject of this appeal.

In this case, the petitioner appeals following the denial of certification to appeal from the judgment dismissing his second amended consolidated petition for a writ of habeas corpus (consolidated petition). On appeal, the petitioner claims that the habeas court, *T. Santos, J.*, abused its discretion by denying his petition for certification to appeal, as (1) the motion to withdraw pursuant to an *Anders*[2] brief filed by appointed habeas

[1] See *State* v. *Oliphant*, 47 Conn. App. 271, 702 A.2d 1206 (1997), cert. denied, 244 Conn. 904, 714 A.2d 3 (1998).

[2] See *Anders* v. *California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

counsel was granted improperly, (2) his constitutional rights were violated by the courts' failure to appoint substitute habeas counsel and to grant him access to a law library, and (3) there are triable issues concerning (a) newly discovered evidence and his actual innocence, (b) loss of statutory good time credit, and (c) denial of the presumption of innocence. We dismiss the appeal.

This appeal is the petitioner's most recent effort to challenge the legality of his detention filed subsequent to his conviction of one count of defrauding a public community in violation of General Statutes § 53a-122 (a) (4) (larceny conviction). See *State* v. *Oliphant*, 47 Conn. App. 271, 272, 702 A.2d 1206 (1997), cert. denied, 244 Conn. 904, 714 A.2d 3 (1998). In the larceny case, the jury reasonably could have found that the petitioner was collecting welfare benefits from the city of Meriden under the assumed name of Jerome Martin while simultaneously receiving welfare benefits under his own name from the city of Hartford. Id., 272–73. The court, *Gaffney, J.*, sentenced the petitioner to a term of fifteen years imprisonment, execution suspended after seven years, followed by five years of probation. *State* v. *Oliphant*, 115 Conn. App. 542, 544, 973 A.2d 147, cert. denied, 293 Conn. 912, 978 A.2d 1113 (2009). The petitioner appealed from the larceny conviction, claiming that the trial court improperly (1) failed to adequately canvass him prior to accepting his waiver of the right to counsel,[3] (2) denied him the effective assistance of

___

[3] In the petitioner's larceny case, he sought the appointment of a substitute public defender. *State* v. *Oliphant*, supra, 47 Conn. App. 273. Counsel originally appointed to represent the petitioner, Michael Moscowitz, had represented the petitioner in two prior matters. Id. Judge Gaffney denied the petitioner's request. Id. In response, the petitioner informed the court that he wanted to represent himself. Id. Moscowitz had discussed self-representation with the petitioner and stated to the court that he was not certain that the petitioner appreciated the amount of time in prison he was facing if convicted. Id., 273 n.2. Moscowitz asked the court to consider a competency evaluation of the petitioner, who opposed such an evaluation. Id. After canvassing the petitioner, the court granted the petitioner's request to repre-

standby counsel,[4] and (3) concluded that the evidence

sent himself. Moscowitz was appointed standby counsel for the petitioner. Id., 275 n.2.

The petitioner appealed from his larceny conviction, claiming, in part, that the court had not adequately canvássed him pursuant to Practice Book § 961; id., 276; which is now codified in Practice Book § 44-3. In resolving the petitioner's claim of an inadequate canvass, this court stated: "In this case, the [petitioner] stated clearly on the record that he did not want to proceed with the public defender appointed by the court. Knowing that the court would not appoint another public defender, he preferred to represent himself. The trial court then questioned the [petitioner] to ensure that he understood the consequences of his decision to waive his right to counsel. The trial court informed the [petitioner] of the potential exposure that he faced in terms of imprisonment. The court also expressed, on the record, its reluctance to allow the [petitioner] to proceed pro se in this matter, unless convinced that this was clearly what the [petitioner] desired. The trial court then questioned the [petitioner] further and, as a result, was satisfied that the [petitioner] clearly wanted to proceed pro se. . . .

"With respect to the [petitioner's] intelligence and capacity to understand the consequences of his choice, the record reveals that the trial court was familiar with the [petitioner] because, as the [petitioner] himself stated on the record, the trial judge had presided over proceedings involving the [petitioner] on two previous occasions. The trial court, therefore, possessed knowledge of the [petitioner's] intelligence and capacity to understand the proceedings even prior to conducting the [Practice Book § 44-3] canvass of the [petitioner]. . . . The record reveals that the [petitioner] was familiar with legal proceedings generally and trial tactics specifically. In fact, immediately after the trial court's canvass, the [petitioner] filed several pretrial motions with the court, demonstrating his familiarity with legal procedures and practices. As a result, the trial court was properly satisfied that the [petitioner's] waiver of counsel was knowing and intelligent in conformity with [our rules of practice]." (Citations omitted.) Id., 278–79.

Moreover, on appeal, the petitioner argued that the "trial court improperly failed to establish his competency in two respects: (1) competency to waive his right to counsel pursuant to Practice Book § [44-3], and (2) competency to stand trial pursuant to General Statutes § 54-56d. Because there is a presumption in favor of competency to stand trial and no specific evidence was advanced that supported the [petitioner's] incompetency to stand trial pursuant to § 54-56d, we decline to review this claim. In addition, the [petitioner] *waived this issue at oral argument*." (Emphasis added.) Id., 276 n.3.

[4] With regard to the petitioner's claim that he was denied the effective assistance of standby counsel, this court stated: "[A] defendant does not have a state or federal constitutional right to standby counsel. . . . Once a defendant has properly embarked on the path of self-representation, his constitutional right to counsel ceases. . . . The [petitioner's] claim that he was denied the effective assistance of counsel is without merit because

presented at trial was sufficient to prove his guilt beyond a reasonable doubt.[5] *State* v. *Oliphant*, supra, 47 Conn. App. 272. This court affirmed the petitioner's conviction. Id., 284.

While he was imprisoned on his larceny conviction, the petitioner filed an amended petition for a writ of habeas corpus, "in part because he had been forced to wear restraints during jury selection. After an evidentiary hearing, the habeas court [*Pittman, J.*] dismissed his petition on the ground that the petitioner has failed to prove any of the allegations in his petition for a writ of habeas corpus." (Internal quotation marks omitted.)

after deciding to proceed pro se, he had no constitutional right to the effective assistance of counsel in any capacity. . . .

"In addition, the usual context in which standby counsel has abridged a defendant's right to conduct the trial occurs when standby counsel is overly zealous and interferes with the defendant's ability to conduct his trial. . . . In this case, there is no evidence that standby counsel unduly interfered with the [petitioner's] ability to conduct his trial. In addition, the [petitioner] relied on [his standby counsel] at several points during the trial regarding the admissibility of evidence and trial tactics. There is no merit to the [petitioner's] claim that standby counsel was ineffective in this case." (Citations omitted.) *State* v. *Oliphant*, supra, 47 Conn. App. 281–82.

[5] Regarding the petitioner's claim of insufficient evidence, the petitioner argued in this court that "there was insufficient evidence to prove the statutory requirement of [his] intent to deprive Meriden permanently of welfare benefits. He claim[ed] that because he informed Meriden, after the receipt of certain benefits, that he was in fact Anthony Oliphant, and not Jerome Martin as he had claimed, he lacked the specific intent to deprive Meriden permanently of welfare benefits received thereafter." *State* v. *Oliphant*, supra, 47 Conn. App. 282.

This court's review of the record demonstrated that, although the petitioner "claims that he disclosed to Meriden welfare officials that he was actually Anthony Oliphant and not Jerome Martin as he had claimed, there was testimony at trial to the contrary. This testimony revealed that the [petitioner] consistently referred to himself as Jerome Martin and never corrected Meriden officials when they referred to him as Jerome Martin. The jury apparently credited this testimony and did not find the [petitioner's] claim to the contrary credible. We cannot disturb this finding as clearly erroneous under the circumstances. Therefore, the [petitioner's] claim that there was insufficient evidence to prove his guilt beyond a reasonable doubt is without merit." Id., 283–84.

*Oliphant* v. *Commissioner of Correction*, 80 Conn. App. 613, 614, 836 A.2d 471 (2003), cert. denied, 268 Conn. 907, 845 A.2d 412 (2004). On appeal to this court, the petitioner claimed that Judge Pittman improperly "concluded that he failed to meet his burden of proof on his claims that (1) it was an abuse of discretion for [Judge Gaffney] to require that he wear shackles during voir dire,[6] (2) it was an abuse of discretion for [Judge

[6] In resolving the petitioner's claim that shackles interfered with his state and federal constitutional rights to a fair trial, this court examined the record and found that Judge Pittman had reviewed "the relevant law regarding a criminal defendant's right to be free of restraints during trial [and] properly determined that the petitioner did not prove his allegations on that claim." (Citations omitted.) *Oliphant* v. *Commissioner of Correction*, supra, 80 Conn. App. 615.

The record of the petitioner's larceny trial revealed Judge Gaffney's rationale for requiring "the petitioner's restraint during voir dire." Id. He stated: "During the entire period of selection . . . the [petitioner] has been shackled, has remained in shackles throughout the proceedings. . . . [I]n denying [the petitioner's] request that the shackles be removed, the court has relied on its own observations of [the petitioner's] conduct during these proceedings and also on information that was submitted to it from independent sources. That information includes loud and very obstreperous conduct by the [petitioner] in court last week. . . . It was also called to the court's attention that the [petitioner] physically, or at least attempted, to assault his then counsel . . . . The attitude of the [petitioner] displayed during these times has bordered at times on the menacing if not threatening. It was called to the court's attention that the [petitioner] recently issued what might be defined as a veiled threat directed at one of the [judicial marshals] that [would] be implemented when [the petitioner] obtained his liberty. For all of these reasons, and under all of the circumstances, the court believes that the shackles were and have remained necessary throughout these proceedings and that, as the record will note, was the recommendation of [the judicial marshal in charge at the courthouse], both to me outside of the courtroom and yesterday in the courtroom when he testified." (Internal quotation marks omitted.) Id., 615–16. This court found that the record supported Judge Pittman's conclusion with respect to the petitioner's being shackled for voir dire. Id.

Although the petitioner claimed that he was unduly prejudiced by the shackling order and therefore was denied a fair trial, this court found that Judge Pittman stated that Judge Gaffney "had imposed the restraints in a way to minimize any prejudice to the petitioner, and it was the petitioner himself who exposed the restraints to potential jurors." (Internal quotation marks omitted.) Id., 616. Instead of accepting Judge Gaffney's "offer to conceal the shackles by conducting voir dire from a seated position, the petitioner chose to walk about the courtroom and call attention to the

Gaffney] to order him to appear at trial wearing a prison uniform and (3) it was a violation of his constitutional right of access to the court to deny him the use of the law library in the correctional facility in which he was housed during the preparation for his trial."[7] Id., 613–14. This court affirmed the judgment of the habeas court dismissing the petitioner's amended petition for a writ of habeas corpus. Id., 618.

The petitioner commenced the probationary portion of his larceny sentence on August 30, 2002. See *State v. Oliphant*, supra, 115 Conn. App. 544. On October 6, 2006, the petitioner was arrested pursuant to a warrant for an assault he was alleged to have committed on Rhonda Dixon on September 25, 2006. Id., 545. Four police officers were needed to arrest the petitioner, as he failed to comply with police directives and was violent toward them. Id., 545–47. The court, *Vitale, J.*, held a violation of probation hearing and found by a preponderance of the evidence that the petitioner had committed the crimes of assault, interfering with an officer, and threatening. Id., 547. The court also found that the petitioner had "violated the standard condition of his probation that he not violate any criminal law of the United States, this state or any other state or territory," and "determined that the beneficial aspects of probation were no longer being served." Id. On October 26, 2007, Judge Vitale revoked the petitioner's probation and sentenced him to serve six and one-half years in the custody of the respondent, the Commissioner of Correction. Id.

---

shackles while questioning the prospective jurors. Significantly, and contrary to the petitioner's assertions, the venirepersons indicated that the shackles did not affect their objectivity." Id., 616–17; see also id., 617 n.5.

[7] As to the petitioner's claim that Judge Pittman abused her discretion by concluding that he failed to support his allegations that Judge Gaffney abused his discretion by requiring him to appear at trial in a prison uniform and that his constitutional right of access to the court was not violated when the petitioner was denied the use of the law library in the correctional facility where he was housed, this court determined that the petitioner did not state such allegations in his amended petition for a writ of habeas corpus. *Oliphant v. Commissioner of Correction*, supra, 80 Conn. App. 618.

The petitioner appealed to this court, claiming that Judge Vitale "improperly (1) restricted his cross-examination of [Dixon],[8],[9] (2) refused to apply the exclusion-

[8] The petitioner also claimed that the court's refusal to let him recall Dixon for further cross-examination deprived him of the state and federal constitutional rights to confront witnesses against him. This court noted that a revocation of probation hearing is not part of a criminal proceeding and that the full panoply of rights accorded a criminal defendant do not pertain to a probation revocation hearing, quoting *Morrissey* v. *Brewer*, 408 U.S. 471, 480, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972). See *State* v. *Oliphant*, supra, 115 Conn. App. 548 n.5.

[9] Regarding the petitioner's claim that the court improperly restricted his cross-examination of Dixon and abused its discretion by refusing to let him recall Dixon; *State* v. *Oliphant*, supra, 115 Conn. App. 547–48; the record contains the following procedural facts. Initially, the petitioner was represented by an attorney, Omar Williams. Id., 548. Williams cross-examined Dixon. Several days later, the petitioner asked Judge Vitale to let him represent himself. Id. The court canvassed the petitioner extensively and found that he was competent to waive counsel and that his waiver was knowing, intelligent and voluntary. Id. The court, however, appointed Williams standby counsel. Id.

The petitioner conducted cross-examination of the police officer who took a report from Dixon, and questioned him about facts in the report and arrest warrant affidavit that contradicted some of Dixon's testimony. Id., 548–49. During his case-in-chief, the petitioner sought to recall Dixon. Id., 549. The state objected and asked that the court require the petitioner to make an offer of proof to establish a valid reason to recall Dixon. Id. The court recessed to provide the petitioner with an opportunity to confer with Williams. Id. When court reconvened, the petitioner stated that he wanted to recall Dixon "for two reasons: (1) to impeach her through her past conduct that revealed her to be a self-destructive, serial sexual predator and (2) to explore apparent discrepancies between her testimony and [the police officer's] affidavit in support of the [petitioner's] arrest warrant as well as an affidavit Dixon signed in support of her request for a protective order." (Internal quotation marks omitted.) Id.

The court sustained the state's objection, ruling that the petitioner "was not allowed to impeach Dixon with conduct that was merely illustrative of general bad behavior because it was not relevant to her credibility . . . [and] the apparent discrepancies alluded to by the [petitioner] were covered extensively by Williams during his cross-examination of Dixon. Moreover . . . not only had Dixon been subjected to cross-examination that adequately demonstrated any possible motive, interest or bias on her part, but [also] the [petitioner] presented extensive testimony that supported his contentions involving her credibility." Id., 549–50.

In concluding that Judge Vitale did not abuse his discretion when he sustained the state's objection to the petitioner's recalling Dixon, this court noted the considerable lengths that Judge Vitale went to accommodate the petitioner's response to the state's objection and throughout the hearing. Id., 550–51. He gave the petitioner ample time to confer with Williams and

ary rule,[10] (3) concluded that the evidence was sufficient to determine that he had violated his probation[11] and (4) revoked his probation."[12] Id., 544. This court affirmed the judgment finding the petitioner in violation of his probation. Id., 555.

Thereafter, the petitioner, representing himself, filed three petitions for a writ of habeas corpus on the following dates: February 27, 2007 (CV-07-4001597-S), December 14, 2007 (CV-08-4002149-S), and April 3, 2008 (CV-08-4002357-S). Attorney Rosemarie T. Weber was

"was solicitous in considering his offer of proof." Id., 551. This court further stated that Judge Vitale "gave a reasoned response to the [petitioner's] offer of proof that was supported by relevant and sound decisional law and our rules of evidence. Moreover, the court concluded appropriately that Dixon was subjected to a thorough cross-examination by Williams that served the appropriate function of cross-examination—the exposure of Dixon's potential motive, interest, bias or prejudice." Id.

[10] "[U]nder our Supreme Court's reasoning in *Payne* v. *Robinson*, 207 Conn. 565, 541 A.2d 504, cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988), the exclusionary rule does not apply to probation revocation hearings." *State* v. *Oliphant*, supra, 115 Conn. App. 551.

[11] This court reviewed the evidence before Judge Vitale and concluded that it amply supported the court's factual findings by a preponderance of the evidence that the petitioner "committed the crimes of assault in the third degree, assault in the second degree, threatening and interfering with an officer." *State* v. *Oliphant*, supra, 115 Conn. App. 553–54. Moreover, the petitioner did not claim that Judge Vitale's findings were not sufficient to support the finding that the petitioner violated the terms of his probation. Id., 553. On appeal, the petitioner faulted Judge Vitale in crediting the testimony of the police officers, rather than his testimony or that of his neighbor concerning the events of September 25 and October 6, 2006. Id. Although the petitioner couched "his argument in terms of insufficiency of the evidence, he confuses the issues of sufficiency and credibility." Id. "[T]he weight to be given to the credibility of a witness is within the sole province of the trier of fact and will not be reviewed on appeal . . . ." (Citation omitted.) Id.

[12] This court reviewed the record and concluded that Judge Vitale did not abuse his discretion by revoking the petitioner's probation. *State* v. *Oliphant*, supra, 115 Conn. App. 555. The court determined that Judge Vitale properly considered whether the beneficial aspects of probation were being served with respect to the petitioner. Id. "[T]he court took into consideration the favorable testimony of the [petitioner's] sister, the fact that [he] had, in the time he was on probation, secured gainful employment, attended college and paid restitution. It also considered the [petitioner's] extensive criminal history, the fact that he previously had violated his probation, the violent nature of the incidents that led to the revocation hearing and his demonstrated lack of remorse about those incidents. It then found that the benefi-

appointed to represent him in these matters. On May 28, 2008, the habeas court, *Schuman, J.,* granted the motion to consolidate the petitions under docket number CV-08-4002357-S. Weber filed an amended petition for a writ of habeas corpus and the respondent filed a return. On July 17, 2008, Weber filed a reply to the return and a second amended petition for a writ of habeas corpus.[13] On that date, Weber also filed a motion for permission to withdraw as counsel for health related reasons. The habeas court, *A. Santos, J.,* granted Weber's motion to withdraw and noted that it would not act on the second amended consolidated petition, as the petitioner had informed the court that the allegations contained in the petition were incomplete.

On September 9, 2008, the self-represented petitioner filed yet another petition for a writ of habeas corpus, which was docketed as CV-08-4002616-S. On September 10, 2008, the habeas court, *Nazzaro, J.,* issued a lengthy order. In the order, Judge Nazzaro recited the petitioner's larceny conviction and probation violation and related histories, and identified the allegations of the petition.[14] The court noted the consolidated petition then pending in the court and noted also that the allegations in the September 9, 2008 petition were duplicative

---

cial aspects of probation were no longer being served and revoked the [petitioner's] probation." Id.

[13] The petitioner's second amended petition for a writ of habeas corpus sounded in five counts: count one—ineffective assistance of standby counsel Moscowitz, count two—denial of access to court, count three—ineffective assistance of appellate counsel Paul Kraus, count four—ineffective assistance of habeas trial counsel Norman Pattis, and count five—ineffective assistance of habeas appellate counsel Richard Marquette.

[14] In his September 19, 2008 petition for a writ of habeas corpus, the petitioner alleged violation of his rights under the eighth amendment to the United States constitution; the violation of probation charges were initiated by a nonexistent assistant state's attorney; the Hamden police had no authority to arrest him; the trial court improperly permitted his retained counsel, Diane Polan, to withdraw without prior notice; and that he was denied all opportunities to post bail until October 26, 2008, when he was found to have violated probation.

or that they arose out of the same set of facts and underlying conviction and probation violation. The court determined that judicial economy would be served by consolidating all of the petitions. The court also ordered the petitioner to refrain from filing additional petitions arising out of the subject larceny conviction or violation of probation.[15]

Thereafter, Attorney Robert J. McKay was appointed to represent the petitioner. On February 16, 2010, pursuant to Practice Book § 23-41, McKay filed a motion for permission to withdraw as counsel and, under seal, an *Anders* brief. See footnote 2 of this opinion. On February 19, 2010,[16] and March 19, 2010,[17] the petitioner filed

---

[15] Judge Nazzaro then stated: "The court further attends to the prolific filing tendencies of the petitioner. His currently pending cases provide him with an opportunity to raise any and all available claims arising out of [his larceny conviction and probation violation] and sentences. While the petitioner's present consolidated petitions are pending before this court, the petitioner is directed not to file any new petitions attacking the same conviction and sentences arising out of the [1995 larceny conviction]. If the petitioner wishes to raise additional claims arising from these underlying convictions, he may request to amend the operative petition currently pending before the court under Docket No. CV-08-4002357-S."

[16] On February 19, 2010, the petitioner objected to McKay's "defective and pernicious" motion for permission to withdraw on the grounds that (1) McKay illegally served his motion to opposing counsel, (2) the petitioner "received *no* exhibits or . . . any type of court-transcripts accompanying" the motion for permission to withdraw, and (3) without the "court-transcripts and *all* exhibits mentioned" in McKay's motion for permission to withdraw, "it would be impossible for the petitioner to either frame or fashion an effective motion in opposition . . . ." (Emphasis in original.)

By letter dated March 3, 2010, McKay responded to the petitioner, stating, in part, that "[e]ven though I know you have at least one copy of each of the 1995 jury trial transcripts and a copy of the partial 2007 [violation of probation] Hearing Transcripts, I am forwarding you copies of same."

By transmittal letter dated April 9, 2008, the Office of Chief Public Defender sent the petitioner twenty-three volumes of transcript, January 11 through October 26, 2007, regarding "*State* v. *Anthony Oliphant,* CR 95-165310, A.C. 29362."

[17] The petitioner filed a supplemental memorandum of law on March 19, 2010, in opposition to McKay's motion to withdraw, stating, in part, that (1) on approximately December 27, 1994, the self-represented petitioner had filed four petitions for a writ of habeas corpus in the United States District Court for the District of Connecticut; (2) on February 15, 1995, he turned himself in to the Meriden police to answer "fabricated criminal-charge of

an objection to the motion to withdraw. The habeas court, *Sferrazza, J.*, granted McKay's motion to withdraw. In a memorandum of decision dated February 15, 2011, Judge Sferrazza concluded that because "there are no nonfrivolous issues to be tried, the motion to withdraw is granted. Substitute counsel will not be appointed. The petitioner may represent himself at the habeas trial if he wishes to pursue this matter further."[18]

(allegedly) 'Defrauding A Public Community' (or welfare fraud) . . . as was done to petitioner as retaliation for four . . . federal civil lawsuits"; (3) following his larceny conviction, the petitioner has filed "*over* [seven] federal habeas petitions and over [ten] state habeas petitions in order to exhaust state remedies to receive federal habeas relief. All to *no* avail?" (Emphasis in original.); (4) "Since the petitioner's 'spurious' [larceny] conviction and sentencing he has been surreptitiously, subversively, and insidiously denied *all* opportunities to exhaust state court remedies before seeking federal habeas relief. Because the petitioner *still* continues to be subversively appointed emissaries of the state, as . . . McKay, under the guise of attorneys, public defenders, and special public defenders in order to obviate, subvert and sabotage *all* the petitioner's attempts at valid relief . . . ." (Emphasis in original.); (5) McKay was appointed the petitioner's counsel, the petitioner was dissatisfied with Weber's failure to include in the amended consolidated petitions certain federal claims that "validly and irrefutably prove that this petitioner's claims *are not* wholly frivolous! As is substantiated by . . . Weber's amended state habeas petitions . . . which makes . . . McKay's 'motion for permission to withdraw as counsel' both a sham and a canard"; (6) McKay refused to include the petitioner's federal constitutional claims in an amended consolidated petition; (7) following a status conference, McKay informed the petitioner via letter that the consolidated habeas petition was scheduled for trial on March 26, 2010, but that McKay "capriciously filed his . . . *counterfeit* 'motion for permission to withdraw as counsel' under the guise of the petitioner's claims, allegedly, being wholly frivolous as total protest"; (8) "[d]espite the overt cabal to deny the petitioner remedy and relief, since September 1, 1995, in state court from spurious conviction . . . with . . . McKay being fully aware and cognizant that exhaustion of available state court remedies is a prerequisite for petitioner to receive federal habeas relief . . . [t]herefore causing the petitioner's constitutional violations to continue to be omitted by the illegal 'emissary-tactics' of McKay . . . with impunity, wrongfully"; and (9) the petitioner did not receive McKay's exhibits A and L until March 5, 2010.

[18] On April 12, 2011, the petitioner filed a motion for the appointment of a special public defender. On May 12, 2011, Judge Schuman denied the motion, citing Judge Sferrazza's twenty-six page memorandum of decision "detailing the petitioner's long history of habeas filings and appointments of counsel, and ultimately granting the motion of [the] petitioner's latest counsel . . . McKay, to withdraw, under *Anders* principles, on the ground

Thereafter, pursuant to a scheduling order, the second consolidated petition was set down for trial on July 1, 2011.

In response to an objection filed by the petitioner in which he claimed that the respondent had never filed a return to the April 3, 2008 petition for a writ of habeas corpus (April, 2008 petition),[19] the respondent filed an amended return to that petition.[20] On July 1, 2011, the parties appeared for a show cause hearing before the court, *T. Santos, J.* The purpose of the show cause hearing was to provide the petitioner an opportunity to demonstrate and explain why the issues that he raised in his consolidated petition were not wholly frivolous. At the conclusion of the show cause hearing, Judge Santos

that there were no nonfrivolous issues to be tried in the four currently pending consolidated habeas petitions. Judge Sferrazza specifically ordered that [s]ubstitute counsel will not be appointed, which he was fully authorized to do." (Internal quotation marks omitted.)

On May 23, 2011, the petitioner filed a motion for the appointment of standby counsel. The habeas court, *Solomon, J.*, denied the motion on June 22, 2011, stating that the "court has previously found petition to be frivolous. Petitioner is not entitled to appointed counsel or standby counsel."

[19] The April, 2008 petition concerned the petitioner's violation of probation. The petitioner alleged, in the respective boxes of a preprinted form, that the finding was illegal because (5a) the charges giving rise to his violation of probation were dismissed, (5b) he rejected a plea bargain because no crime was ever committed, (5c) he was not given good time credit for the portion of his larceny sentence he already had served, (5d) his violation of probation hearing was not timely, given the date of his arrest, (5e) the court did not permit him to examine Dixon, (5f) standby counsel interfered with his self-representation, (5g) the Hamden police were without authority to arrest him, (5h) he was "appalled" by the "abuse of authority," (5i) abuse of police power and authority, and (5j) the violation of probation hearing was a sham because he was the subject of retaliation for having filed two citizen police complaints resulting in a false arrest and false violation of probation finding.

[20] In his amended return, the respondent responded to the petitioner's allegations as follows: (5a) failure to state a claim, res judicata; (5b) failure to state a claim, procedural default, res judicata; (5c) res judicata; (5d) failure to state a claim; (5e) res judicata; (5f) failure to state a claim, procedural default; (5g) procedural default; (5h) failure to state a claim, procedural default; (5i) procedural default; and (5j) failure to state a claim, procedural default, res judicata.

ruled that "[i]t seems appropriate for the court to dismiss this [petition] as either heard, res judicata or on these various other grounds that were stated not only in the return of the [respondent], but also in the pretrial brief." The petition therefore was dismissed pursuant to Practice Book § 23-29 (5).

On July 11, 2011, the petitioner filed a petition for certification to appeal from the dismissal of his petition for a writ of habeas corpus. Judge Santos denied the petition for certification to appeal. This appeal followed.

The petitioner claims that Judge Santos abused her discretion by denying his petition for certification to appeal from the dismissal of his consolidated petition for a writ of habeas corpus in that (1) Judge Sferrazza improperly granted McKay's motion to withdraw,[21] (2) the petitioner's constitutional rights were violated as a result of the failure to appoint substitute habeas counsel and to grant access to a law library, and (3) the failure to conduct a trial on his claims of (a) actual innocence, (b) loss of statutory good time credit, and (c) deprivation of the constitutional right to the presumption of innocence. We disagree and therefore dismiss the appeal.

The standard of review and the hurdles a petitioner must overcome to obtain appellate review of a habeas court's denial of a petition for a writ of habeas corpus after certification to appeal has been denied are well known. See *Wright* v. *Commissioner of Correction*, 143 Conn. App. 274, 284–85, 68 A.3d 1184, cert. denied, 310 Conn. 903, 75 A.3d 30 (2013). "In *Simms* v. *Warden*,

---

[21] More specifically the petitioner claims that Judge Sferrazza improperly granted the motion to withdraw because (1) the record is devoid of evidence that McKay (a) provided the petitioner with the necessary transcripts and exhibits, and (b) looked for evidence outside the record to support the petitioner's competency claims.

229 Conn. 178, 187, 640 A.2d 601 (1994), [our Supreme Court] concluded that . . . [General Statutes] § 52-470 (b) prevents a reviewing court from hearing the merits of a habeas appeal following the denial of certification to appeal unless the petitioner establishes that the denial of certification constituted an abuse of discretion by the habeas court. In *Simms* v. *Warden*, 230 Conn. 608, 615–16, 646 A.2d 126 (1994), [our Supreme Court] incorporated the factors adopted by the United States Supreme Court in *Lozada* v. *Deeds*, 498 U.S. 430, 431–32, 111 S. Ct. 860, 112 L. Ed. 2d 956 (1991), as the appropriate standard for determining whether the habeas court abused its discretion in denying certification to appeal. This standard requires the petitioner to demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further. . . . A petitioner who establishes an abuse of discretion through one of the factors listed above must then demonstrate that the judgment of the habeas court should be reversed on its merits. . . . In determining whether the habeas court abused its discretion [a reviewing court] necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous." (Emphasis in original; internal quotation marks omitted.) *Wright* v. *Commissioner of Correction*, supra, 285.

*Anders* v. *California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), and *State* v. *Pascucci*, 161 Conn. 382, 385, 288 A.2d 408 (1971), "stand for the proposition that when a motion to withdraw as counsel is filed asserting that there are no nonfrivolous issues on appeal, the court is required to review the entire record before it, including the pleadings and evidence. The court's ultimate determination is a mixed question of

law and fact. The de novo standard of review is applicable to such determinations of a . . . habeas court's decision. See *State* v. *Kirby*, 280 Conn. 361, 394, 908 A.2d 506 (2006). Furthermore, it is only logical that this court review the entire record before the habeas court, as the federal and state precedents require this of the habeas court itself. In effect, in our de novo review, we undertake an *Anders* style of review of the *Anders* decision." *Lorthe* v. *Commissioner of Correction*, 103 Conn. App. 662, 676, 931 A.2d 348, cert. denied, 284 Conn. 939, 937 A.2d 696 (2007). In order to conduct a de novo review of the claims raised on appeal, we require an adequate record. See Practice Book § 61-10.

I

The petitioner claims that Judge Santos abused her discretion by denying his petition for certification to appeal because Judge Sferrazza improperly granted McKay's motion to withdraw. Specifically, the petitioner claims that McKay should not have been permitted to withdraw because the record is devoid of evidence that McKay (1) provided the petitioner with copies of the transcripts and exhibits that accompanied his *Anders* brief, and (2) looked for evidence outside the record that the petitioner was incompetent to waive his right to counsel during the larceny trial and to represent himself at the violation of probation hearing. We agree with the respondent that the record is inadequate for our review, as no court has made any findings of facts relevant to the petitioner's claims.[22]

Practice Book § 61-10 (a) provides that "[i]t is the responsibility of the appellant to provide an adequate

___

[22] The respondent asserts that the petitioner is really claiming that McKay provided him with ineffective assistance of counsel. Ineffective assistance of counsel claims, generally, cannot be raised by means of direct appeal, as such claims are dependent on a full evidentiary record. See *State* v. *Drakeford*, 261 Conn. 420, 428, 802 A.2d 844 (2002).

record for review. The appellant shall determine whether the entire trial court record is complete, correct and otherwise perfected for presentation on appeal. For purposes of this section, the term 'record' is not limited to its meaning pursuant to Section 63-4 (a) (2), but includes all trial court decisions, documents and exhibits necessary and appropriate for appellate review of any claimed impropriety."[23]

A

The petitioner claims, in part, that Judge Santos abused her discretion by denying his petition for certification to appeal because Judge Sferrazza improperly granted McKay's motion to withdraw. The petitioner claims that Judge Sferrazza improperly failed to find that McKay had failed to provide the petitioner with copies of the documents that accompanied the *Anders* brief in violation of *State* v. *Pascucci*, supra, 161 Conn. 385.[24] In response, the respondent contends that the

[23] Despite an inadequate record to review the claims on appeal, we have undertaken a thorough review of Judge Sferrazza's memorandum of decision in granting McKay's motion to withdraw and the pleadings, transcripts in the record before us as well as the three decisions from this court concerning the petitioner's prior appeal. On the basis of our review of the record and the briefs, we conclude that Judge Sferrazza properly granted McKay's motion to withdraw in a thorough and well reasoned memorandum of decision. See *Oliphant* v. *Commissioner of Correction*, 53 Conn. Supp. 194, 80 A.3d 597 (2011). We therefore adopt it as an accurate statement of the relevant facts, issues and applicable law. It would serve no useful purpose for us to repeat the discussion contained therein. See, e.g., *Norfolk & Dedham Mutual Fire Ins. Co.* v. *Wysocki*, 243 Conn. 239, 241, 702 A.2d 638 (1997).

[24] "[I]f counsel finds [a petitioner's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal." (Internal quotation marks omitted.) *State* v. *Pascucci*, supra, 161 Conn. 385. The petitioner does not claim that McKay did not provide him with a copy of the *Anders* brief.

In support of his claim in this court, the petitioner relies on *In re May*, 153 N.C. App. 299, 302, 569 S.E.2d 704 (2002) ("documents deemed necessary for the review include the transcript, the record on appeal, the appellate brief filed by defendant's attorney, and the appellate brief filed by the State in response" [internal quotation marks omitted]), aff'd, 357 N.C. 423, 584

record is inadequate for our review. We agree with the respondent's assertion that the record is inadequate for our review.

As stated previously, after McKay filed his motion to withdraw with an *Anders* brief, under seal, the petitioner objected to the motion to withdraw. See footnotes 16 and 17 of this opinion. One of the grounds for the petitioner's objection was an allegation that McKay had failed to provide him with copies of transcripts and exhibits filed with the *Anders* brief, and specifically, the petitioner claimed that he did not receive complete copies of exhibits A and L, which are transcripts, until February 17, 2010. The petitioner's own appendix to his brief in this court, however, contains copies of letters that accompanied the transmittal of exhibits A and L to him. See footnote 16 of this opinion. Although the petitioner objected to McKay's motion to withdraw on the ground that McKay had not provided him with copies of exhibits A and L, in his appellate brief, the petitioner has not identified what portions of the record or transcripts, if any, he did not receive from McKay. His claim is of a generalized nature. Although the petitioner objected to the granting of the motion to withdraw on the ground that he had not received copies of all exhibits, Judge Sferrazza did not address that issue in his memorandum of decision. The petitioner has not provided a record that contains a factual determination that McKay, in fact, failed to comply with the requirements of *Pascucci*.

Although an appellant may seek an articulation from the trial court to complete the record; see Practice Book § 66-5; we cannot conclude that Judge Sferrazza could

S.E.2d 271 (2003). This state has not identified the documents deemed necessary for review of an *Anders* brief, and we need not make that determination to resolve the petitioner's appeal. *In re May* is a juvenile case in which the defendant's attorney failed to serve an *Anders* brief on the child's parents, guardian, or custodian. Id., 300.

have determined, on the basis of the record before him, including the petitioner's objection, what McKay did and did not, if anything, provide the petitioner with respect to the motion to withdraw. There was no hearing at which a court could determine what exhibits and portions of the record the petitioner had and did not have, regardless of how or from whom he acquired them. For the foregoing reasons, the record is inadequate for us to review the petitioner's claim.

## B

The petitioner also claims that Judge Sferrazza improperly granted the motion to withdraw because McKay failed to look beyond the record for evidence that the petitioner was not competent to represent himself at the larceny trial and the violation of probation hearing. The respondent asserts that the claim is not reviewable because the record does not demonstrate McKay's rationale, if any, for failing to look outside the record for evidence to support the petitioner's claims of incompetency. The respondent also claims that the claim fails as a matter of law. Although we agree that the record is inadequate to review McKay's rationale, we nonetheless review the claim because it presents a question of law for which the findings and reasoning of the trial court are not necessary to our plenary review. See *State* v. *Crespo*, 246 Conn. 665, 688, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999).

In submitting his *Anders* brief, McKay stated in part that "after [a] thorough review and a conscientious examination of the various claims made by the petitioner and a thorough review of documentation, [p]olice [r]eports, [c]ourt [r]ecords and [i]nformation, the transcripts of the petitioner's 1995 jury trial and 2007 [violation of probation] hearing, appellate decisions and the litigation of previous [h]abeas petitions and appeals

[therefrom, the] undersigned ultimately concluded that the petitioner's claims within the above mentioned habeas corpus cases are wholly frivolous and counsel requests permission to withdraw." McKay's brief includes a section entitled *Anders* standard.

With regard to the petitioner's claims of mental incompetence alleged in the petition for a writ of habeas corpus filed on February 27, 2007, McKay found that the petitioner repeated claims similar to those alleged in the 1998 petition for a writ of habeas corpus related to the 1995 larceny conviction. Among the claims alleged, the petitioner alleged that "he had suffered temporary insanity and duress when Judge Gaffney, the prosecutor and his standby counsel conspired against him and made him represent himself at trial. Also, the petitioner claims that he was not given a psychiatric/mental examination before being 'made' to represent himself at the jury trial. The petitioner asserts that he was not properly canvassed by Judge Gaffney and that Attorney Michael Moscowitz (standby counsel) did not do his best on behalf of the petitioner. Within said petition, the petitioner admits that he had raised these issues in prior habeas petitions. . . . The reference to the 1995 conviction after a jury trial in which the petitioner requested the court to represent himself, had been previously litigated in the habeas corpus hearing before Judge Pittman and reviewed by the Appellate Court on a direct appeal and habeas appeal. As far as a reference to his mental competence, the petitioner never brought that issue or claim to the attention of anyone, any attorney, Judge Gaffney's court in 1995 nor Judge Vitale's in 2007. This pro se petition is the only petition [in which the] petitioner brings up this subject. After a thorough review of the petitioner's 1995 and 2007 trial files, there does not exist any report, record or note indicating a reference to a mental health examination or competency exam to support a present claim

of that nature. Within the Appellate Court opinion at *State* v. [*Oliphant,* supra, 47 Conn. App. 279] . . . the court noted that: 'With respect to the [petitioner's] intelligence and capacity to understand the consequences of his choice, the record reveals that [Judge Gaffney] was familiar with the [petitioner] because, as the [petitioner] himself stated on the record, the trial judge had presided over proceedings involving the [petitioner] on two previous occasions. The trial court, therefore possessed knowledge of the [petitioner's] intelligence and capacity to understand the proceedings even prior to conducting the [Practice Book § 44-3] canvass of the [petitioner].' "

McKay concluded, on the basis of his review of the record, that the petitioner's claims were frivolous, and "are not and could not be supported by any explanation or evidence and could not be proven before a habeas court to have violated any of the petitioner's federal or state constitutional rights."

Judge Sferrazza cited the competency standard in his memorandum of decision granting McKay's motion to withdraw: "The standard used to determine whether a defendant is competent to stand trial is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as a factual understanding of the proceedings against him. . . . *State* v. *Bigelow*, 120 Conn. App. 632, 641, 994 A.2d 204, cert. denied, 297 Conn. 916, 996 A.2d 278 (2010). [W]hen a reasonable doubt concerning the defendant's competency is raised, the trial court must order a competency examination. . . . Id., 641–42." (Internal quotation marks omitted.)

Judge Sferrazza agreed with McKay that there was no merit to the petitioner's claim regarding the alleged incompetency to stand trial. The court stated, in part,

that prior to the petitioner's being permitted to represent himself, "Moscowitz requested that the court consider having the petitioner undergo a competency exam because he did not know whether the petitioner appreciated his situation, being exposed to twenty years incarceration on the larceny charge. When [Judge Gaffney] canvassed the petitioner on his right to represent himself, [he] reviewed the nature of the proceedings and the petitioner's exposure. The petitioner indicated that he understood and even waived a competency exam on the record. There is simply no evidence that the petitioner was not competent to stand trial. As noted by the Appellate Court on the petitioner's direct appeal of his conviction, [t]he record reveals that the [petitioner] was familiar with legal proceedings generally and trial tactics specifically." (Internal quotation marks omitted.)

Although the petitioner claims that McKay should have looked for "evidence" outside the record that he was incompetent to represent himself at the 1995 larceny trial and during the violation of probation hearing, the petitioner has cited no law requiring his counsel to look beyond the record. Although he claims that both *Anders* and *Pascucci* require counsel seeking to withdraw to look beyond the record, he has failed to cite any language from either of those opinions to that effect. To the contrary, *Anders* requires a conscientious *review of the record*. See *Anders* v. *California,* supra, 386 U.S. 744; see also *State* v. *Pascucci,* supra, 161 Conn. 385; *Lorthe* v. *Commissioner of Correction,* supra, 103 Conn. App. 674. Moreover, despite his claim that he was not competent to represent himself, the petitioner, on appeal here, has not identified any document or record to support his claim that he was incompetent.[25]

---

[25] The petitioner does allege, without documentation, that he was diagnosed with post-traumatic stress disorder, but he has provided no authority that such a diagnosis rendered him incompetent to stand trial or to represent himself in either 1995 or 2007.

## II

The petitioner's second claim is that his petition for certification to appeal was improperly denied because he was denied the right to counsel and access to a law library prior to the show cause hearing. Under our law, the petitioner was not entitled to have counsel appointed for him after Judge Sferrazza determined that the claims in the second amended consolidated petition were wholly frivolous, and the lengthy procedural history regarding the petitioner's claims dating to 1995 demonstrate that he has not been denied access to our courts.[26]

In his memorandum of decision granting McKay's motion to withdraw, Judge Sferrazza stated, in part, "[A]lthough there is no constitutional right to counsel in habeas proceedings, General Statutes § 51-296 . . . creates a statutory right to counsel . . . for an indigent defendant . . . in any habeas corpus proceeding arising from a criminal matter . . . . *Morgan* v. *Commissioner of Correction*, 87 Conn. App. 126, 132, 866 A.2d 649 (2005). The right to appointed counsel is limited, however, and is only available to petitioners who have nonfrivolous claims. [I]f counsel finds [the petitioner's] case to be wholly frivolous . . . he should so advise the court and request permission to withdraw. *Anders* v. *California*, [supra, 386 U.S. 744–45]; *State* v. *Pascucci*, [supra, 161 Conn. 385]; Practice Book § 23-41 (a). When counsel has been appointed . . . and counsel, after conscientious investigation and examination of the case, concludes that the case is wholly frivolous, counsel shall so advise the judicial authority by filing a motion for leave to withdraw from the case. Practice Book § 23-41 (a). Such a motion must, however, be

---

[26] As a matter of policy, the judicial branch utilizes the term "self-represented party" in lieu of the Latin term "pro se." Throughout the proceedings in the habeas court, however, the petitioner, counsel, and the court used the term pro se. In this opinion, we utilize the term used in the habeas court.

accompanied by a brief referring to anything in the record that might arguably support the appeal. *Anders* v. *California*, supra, 744; *State* v. *Pascucci*, supra, 385; Practice Book § 23-41 (b). A copy of such brief must be provided to the client and a reasonable time given for the client to respond. *State* v. *Pascucci*, supra, 385; Practice Book § 23-41 (c). The court then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. *Anders* v. *California*, supra, 744; *State* v. *Pascucci*, supra, 386. If the court finds any legal points arguable on the merits, the case cannot be deemed frivolous, and the court must afford the indigent client the assistance of counsel. *Anders* v. *California*, supra, 744. If the court finds the case to be frivolous, however, it shall grant the motion to withdraw and permit the petitioner to proceed pro se. Practice Book § 23-42 (a)." (Internal quotation marks omitted.)

Judge Sferrazza concluded with respect to the petitioner's amended consolidated petition that there were no nonfrivolous issues to be tried and granted the motion to withdraw. The court also stated that "[s]ubstitute counsel will not be appointed. The petitioner may represent himself at the habeas trial if he wishes to pursue this matter further."

Practice Book § 23-42 (a) provides in relevant part: "The presiding judge shall fully examine the memoranda of law filed by counsel and the petitioner, together with any relevant portions of the records of prior trial court, appellate and postconviction proceedings. If, after such examination, the presiding judge concludes that the submissions establish that the petitioner's case is wholly frivolous, such judge shall grant counsel's motion to withdraw and permit the petitioner to proceed as a self-represented party. . . ."

In support of his claim, the petitioner relies on federal and state case law regarding the right of an indigent

defendant to counsel in a criminal proceeding.[27] The United States Supreme Court has held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds* v. *Smith*, 430 U.S. 817, 828, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977), overruled in part on other grounds by *Lewis* v. *Casey*, 518 U.S. 343, 354, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996) (state not required to enable prisoner to discover grievances and litigate effectively). "[O]ur main concern here is protecting the ability of an inmate to prepare a petition or complaint . . . ." (Citation omitted; internal quotation marks omitted.) Id., 828 n.17.

In establishing the standard regarding a state's obligation to provide inmates with access to the courts, the United States Supreme Court articulated the standard in the disjunctive: adequate law libraries *or* adequate assistance from persons trained in the law. In the present case, Weber was appointed to represent the petitioner after he, himself, had filed three petitions for a

---

[27] The petitioner has quoted language from *Santiago* v. *Commissioner of Correction*, 39 Conn. App. 674, 667 A.2d 304 (1995), and *Morello* v. *James*, 810 F.2d 344 (2d Cir. 1987), for the legal principle established in *Bounds* v. *Smith*, 430 U.S. 817, 829, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977), overruled in part by *Lewis* v. *Casey*, 518 U.S. 343, 354, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996). In *Santiago*, the petitioners did not allege that they had been "denied access to legal materials or assistance in preparing legal memoranda." *Santiago* v. *Commissioner of Correction*, supra, 681. In *Morello*, the legal question was whether the plaintiff had stated a viable claim for relief pursuant to 42 U.S.C. § 1983 when prison guards took possession of his pro se appellate brief for six days when transferring him from one correctional institution to another. *Morello* v. *James*, supra, 345. The United States Court of Appeals for the Second Circuit stated, in part, that "[w]hether the deprivation of Morello's work product ultimately violated his right of access to the courts under the circumstances of this case is a factual question yet to be resolved. We merely hold that [the] plaintiff has pleaded the violation of a substantive constitutional right." Id., 347.

writ of habeas corpus. Weber filed a motion to consolidate those petitions, and filed a consolidated and an amended petition for a writ of habeas corpus. After Weber was permitted to withdraw as counsel, McKay was appointed to represent the petitioner. McKay undertook a review of the second amended consolidated petition and concluded that despite the fact that it had been prepared by a person trained in the law, it contained no nonfrivolous claims. After McKay filed a motion to withdraw, Judge Sferrazza reviewed the motion to withdraw and McKay's brief in accordance with *Anders* v. *California*, supra, 386 U.S. 738. Our review of Judge Sferrazza's memorandum of decision discloses that many of the petitioner's claims were adjudicated in prior appeals or habeas proceedings. Given this procedural history, we cannot discern how the petitioner can claim that he has been denied access to the courts.

As we stated at the beginning of this opinion, the record discloses, and the petitioner acknowledges, that he has been a party represented by appointed counsel in criminal appeals, habeas corpus proceedings and their related appeals. The trial court's conclusion adopted by this court in *Sadler* v. *Commissioner of Correction*, 100 Conn. App. 659, 918 A.2d 1033, cert. denied, 285 Conn. 901, 938 A.2d 593 (2007), aptly fits the circumstances of the case before us. "[C]onsidering the amount of litigation which the petitioner has been involved in, any claim that he has been denied his right to access of the courts is misplaced." (Internal quotation marks omitted.) Id., 663. For the foregoing reasons, the petitioner's claim fails.

### III

The petitioner claims that Judge Santos erroneously found at the conclusion of the show cause hearing that all of the claims he had raised were frivolous. On appeal,

he claims that there were triable issues regarding (1) newly discovered evidence demonstrating actual innocence, (2) deprivation of good time credit under General Statutes § 18-7a, and (3) denial of the presumption of innocence at his larceny trial. We disagree with the petitioner's first and third claim and dismiss the second claim as moot.[28]

## A

The petitioner claims that Judge Santos improperly concluded with respect to his violation of probation that Dixon's hospital records were not newly discovered. The petitioner contends that Dixon's testimony that she went to the hospital where photographs of her injured eye were taken was not credible. The petitioner, therefore, claims that he could not be found to have violated his probation. The petitioner cannot prevail on this claim for a number of reasons, the principal one being that Judge Vitale found that he had committed four crimes in violation of the standard conditions of probation.[29] Whether Dixon's hospital record contains photographs of her injury therefore is of no matter.

When the petitioner commenced the probationary portion of his larceny conviction, he was informed of the standard conditions of probation. At the conclusion

[28] The petitioner claimed that there was a triable issue as to whether he was deprived of statutory good time credit pursuant to § 18-7a. At the time of oral argument in this court, the petitioner's counsel confirmed that the petitioner was no longer incarcerated or on probation. Because there is no relief that this court can provide the petitioner with respect to his claim under § 18-7a, the claim is moot and this court lacks subject matter jurisdiction to hear it. The claim, therefore, must be dismissed. See *Hartney* v. *Hartney*, 83 Conn. App. 553, 565–66, 850 A.2d 1098, cert. denied, 271 Conn. 920, 859 A.2d 578 (2004).

[29] Moreover, at the show cause hearing, the respondent placed a transcript of the violation of probation hearing into evidence. The transcript revealed that a police officer who responded to Dixon soon after she had been assaulted by the petitioner testified as to the injuries to Dixon's eye and that photographs of the injury were placed into evidence.

of the adjudicative phase of the violation of probation hearing, Judge Vitale "found that the state had presented reliable and probative evidence and had proven by a preponderance of the evidence that the [petitioner] had violated his probation by committing the crime of assault in the third degree for his attack on Dixon on September 25, 2006. The court also found that the [petitioner] had committed the crimes of assault in the second degree, interfering with an officer and threatening for his actions on October 6, 2006, when [Hamden police officers] attempted to effectuate his arrest. The court found that the [petitioner] had violated the standard condition of his probation that he not violate any criminal law of the United States, this state or any other state or territory." *State* v. *Oliphant*, supra, 115 Conn. App. 547. The petitioner therefore cannot prevail on his claim of newly discovered evidence and actual innocence.

## B

The petitioner's final claim with respect to a triable issue is that he was denied the presumption of innocence at his larceny trial because he was required to wear shackles during jury selection and to appear one day in court wearing prison garb.

For purposes of this appeal, Judge Gaffney's order that the petitioner be shackled during jury selection was addressed and rejected by this court in *Oliphant* v. *Commissioner of Correction*, supra, 80 Conn. App. 614–18. That portion of the petitioner's claim consequently is barred by the doctrine of res judicata.[30]

---

[30] "[O]rdinarily the doctrine of res judicata operates to preclude the relitigation in one action of a claim or issue that has been determined in a previous, separate action. . . . This does not mean, however, that the doctrine cannot operate within the same case." (Internal quotation marks omitted.) *State* v. *Long*, 301 Conn. 216, 237 n.19, 19 A.3d 1242, cert. denied, 565 U.S. 1084, 132 S. Ct. 827, 181 L. Ed. 2d 535 (2011).

With regard to the petitioner's claim that he was required to appear before the jury in prison garb, he failed to raise that claim in his petition for a writ of habeas corpus. A habeas court is not required to consider a claim that was not alleged. See *Gaffey* v. *Gaffey*, 91 Conn. App. 801, 804 n.1, 882 A.2d 715 (trial court not permitted to decide issues outside those pleaded; pleadings serve to frame issues before trial court), cert. denied, 276 Conn. 932, 890 A.2d 572 (2005).

Judge Santos therefore properly dismissed the consolidated petition for a writ of habeas corpus, as the petitioner failed to identify any triable nonfrivolous issues. We therefore dismiss the appeal.

The appeal is dismissed.